Ruth Elizabeth McCormick **TANKERS-LEY** et al., Plaintiffs,

v.

Joseph M. P. **ALBRIGHT** et al., Defendants.

No. 73 C 883.

United States District Court, N. D. Illinois, E. D.

July 11, 1973.

Don H. Reuben, Lawrence Gunnels and Leo K. Wykell, Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Max E. Wildman, David L. Schiavone and Thomas H. Snyder, Wildman, Harrold, Allen & Dixon, Chicago, Ill., and Paul, Weiss, Rifkin, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This action was instituted by the Trustees of the McCormick-Patterson Trust for a declaratory judgment against two non-resident beneficiaries. The basis of jurisdiction alleged in the complaint is diversity of citizenship. Service on the defendants was made outside the State of Illinois. Ill.Rev.Stat. ch. 110, § 16; F.R.Civ.P. 4(d), (e).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the defendants have moved to dismiss for lack of personal jurisdiction. Since a federal court sitting in diversity must apply the law of the state in which it is located, the question here is whether this court has acquired *in personam* jurisdiction over the defendants pursuant to the Illinois "long arm" statute. O'Hare Int'l Bank v. Hampton, 437 F.2d

1173, 1175 (7th Cir. 1971) ; Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963) ; Ill.Rev.Stat. ch. 110, § 17.

Section 17 provides, in pertinent part, that:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State;

. . . . . .

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section."

The essential facts, taken from the motions, memoranda and affidavits submitted to the court, are substantially without dispute. The McCormick-Patterson Trust was created in Illinois in 1932; the Trust *res* consists entirely of shares of stock of the Tribune Company,[1] which stock, together with the Trust's books and records, are located in Illinois. The Tribune Company's headquarters and principal place of business are in Illinois. All stock dividend checks to the beneficiaries are either delivered in or mailed from Illinois.

Defendant Josephine Albright, at present a resident and citizen of Vermont, is a former resident and citizen of Illinois, but maintains a bank account in Chicago, Illinois, and has received dividend checks from the Trust since 1941. These checks are sent directly to her Illinois bank where they are deposited to her account.

Defendant Joseph Albright is a citizen of the District of Columbia and has received Trust dividend checks, mailed from Chicago, since 1967. In 1971, upon the death of one of the Trustees, Mr. Albright campaigned to succeed the decedent as Trustee. At least twice during this campaign, the defendant traveled to Illinois to meet with a number of the Trustees and beneficiaries and to solicit their support for his candidacy.[2] He also made numerous telephone calls and sent telegrams to Trustees and beneficiaries residing in Illinois for the same purpose. Although this campaign was unsuccessful, Mr. Albright continued to demonstrate an interest in the Trust by making telephone calls to one of the Trustees in Illinois concerning matters relating to the Trust.

On or about March 12, 1973, a notice of annual meeting of stockholders, to be held in Chicago, Illinois, on April 12, 1973, with a proxy statement and proxy were sent to each stockholder of the Tribune Company. The statement contained proposed amendments to the Company's certificate of incorporation and by-laws, which had been proposed by the plaintiffs as Trustees of the Trust and as directors of the Tribune Company. On or about the same date, plaintiffs also sent a letter to all beneficiaries of the Trust, informing them of the proposals and of the Trustees' intention to vote all of the Trust's shares of stock in favor thereof. On March 30, 1973, defendants wrote to plaintiffs in Illinois, outlining their objections to the proposals and the Trustees' intention to vote all of the Trust's stock in favor of the proposed amendments. Their letter to the Trustees' received in Illinois, contained these assertions:

"It seems clear to us that the proposals are not in the interests of the stockholders or the Trust beneficiaries

---

1. The Trust is the holder of record of 53% of the stock of the Tribune Company, a holding company.

2. An uncontroverted affidavit states that Mr. Albright, if elected Trustee, would have been in a position to become a director of the Tribune Company and, thus, to influence both the administration of the Trust and the Company.

who are not members of management. The McCormick-Patterson Trustees are necessarily in a conflict of interest position with respect to the proposed amendments and we believe the only appropriate course for the Trustees to follow is to have the proposed amendments withdrawn at this time and allow the usual process of shareholder votes to determine the manner of electing directors, changes in authorized shares and other charter amendments to take place in due course after termination of the Trust, when the Trust beneficiaries will be empowered to vote their own shares." [3]

On April 3, 1973, Mr. Albright telephoned one of the plaintiffs in Illinois, informed him of the letter, and specifically inquired as to the proposed amendments. Mr. Albright had previously sought to reach this Trustee in Illinois on March 29th.

The letter from the Albrights was received by the Trustees in Illinois and was construed as a precursor of a lawsuit by the beneficiaries to prevent the Trustees from voting in favor of the amendments. Accordingly, the plaintiffs filed the instant declaratory judgment action, which seeks a ruling, *inter alia,* that the plaintiffs are legally empowered to vote the shares in favor of the amendments and that such action does not constitute a conflict of interest, either in their capacity as Trustees or as directors of the Tribune Company.[4]

Although Section 17 has been construed in a number of cases, no precedent has been cited or found dealing with a trust transaction arising from a dispute between beneficiaries and their trustees. Nonetheless, the principles expressed in many of those cases serve as useful guidelines in deciding the question whether the court has jurisdiction over the defendants.

"The legislative intent of the Illinois long arm statute is to exert jurisdiction over nonresidents to the extent permitted under the due process clause" of the United States Constitution. O'Hare Int'l. Bank v. Hampton, *supra,* 437 F.2d at 1176. See Nelson v. Miller, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957); Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 219 N.E.2d 646 (1st Dist. 1966); Ziegler v. Hodges, 80 Ill.App.2d 210, 224 N.E.2d 12 (2d Dist. 1967); Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968). The test of due process was set forth by the U. S. Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), wherein the Court stated:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

See Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Furthermore, it was recently stated that the "facts supporting [a motion to dismiss for lack of personal jurisdiction]

---

3. The papers filed in this action indicate that the Trust is to terminate, and the Tribune Company shares are to be distributed to the beneficiaries, in 1975.

4. In the afternoon of the same day on which the instant suit was filed, and after receiving actual notice thereof, the Albrights instituted an injunction action in the Supreme Court of New York to prevent the three Trustees of the McCormick-Patterson Trust who were residents of New York from voting in favor of the proposed amendments to the certificate and by-laws of the Tribune Company. On April 9, 1973, the New York court denied the Albrights' motion for a preliminary injunction and stayed all further proceedings pending the disposition of the suit in this court.

must be viewed in a light most favorable to the plaintiff." Mumford Elec. Co. v. Delco Dev. Const. Co., No. 71 C 1409 (N.D.Ill.1971) (unreported). A frequently-cited Illinois case on *in personam* jurisdiction, Koplin v. Thomas, Haab & Botts, *supra,* concluded that:

> "[T]he courts in construing section 17 have upheld jurisdiction if the defendant has voluntarily established certain minimum contacts with the State, if the State has an interest in providing the plaintiff a forum for the litigation, and if the assertion of jurisdiction is not fundamentally unfair." 73 Ill.App.2d at 249, 219 N.E.2d at 649.[5]

Defendants argue that they have not had the requisite contacts with Illinois to meet these constitutional and statutory standards.

The initial question is the scope of the defendants' conduct which is to be considered in determining the jurisdictional issue. The defendants assert that under the limitation of Section 17(3), their letter of March 30, 1973, to all of the Trustees and Mr. Albright's recent telephone calls to one of the Trustees in Illinois, regarding the proposed amendment, are the only Illinois contacts which this court should consider. The other activities are claimed to have no connection with the substantive allegations in the declaratory judgment action and, thus, to be irrelevant to the issue of jurisdiction. This court is of the opinion, however, that the broader activities of the defendants concerning the trust should be evaluated in determining whether there is personal jurisdiction to support this action.

 The purpose of Section 17(3) is "to insure that there is a close relationship between a non-resident defendant's jurisdictional activities and the cause of action against which he must defend." Koplin v. Thomas, Haab & Botts, *supra,* 73 Ill.App.2d at 252–253,

219 N.E.2d at 651. The court in *Koplin* stated further that "[i]n the instant case the statutory phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the Illinois courts." 73 Ill.App.2d at 253, 219 N.E.2d at 651. It is the substance rather than the quantity of the defendant's activities which must control the determination whether that conduct is sufficient to subject him to jurisdiction of the state. See International Shoe Co. v. Washington, *supra,* 326 U.S. at 319, 66 S.Ct. 154; Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76 (1st Dist. 1962).

It is apparent that the activities of the defendants in this case have been focused upon the proper administration of the trust being managed by plaintiffs in Illinois. The heart of the controversy engendered by the defendants is best characterized by the defendants themselves in the suit filed by them in New York where they allege, *inter alia,* that (1) the Trustees of the McCormick-Patterson Trust had caused themselves and their spouses to be elected directors of the Tribune Company and its subsidiaries and thus had gained absolute voting control of the board of directors of the company and its subsidiaries, (2) the Trustees, as controlling shareholder-directors of the company, had caused themselves to be elected and to serve as executive officers of the company and its subsidiaries, (3) the Trustees had announced their intention to vote the shares of the stock in favor of a plan of reorganization which would "perpetuate their personal control of the company and advance their personal interests," and which would constitute "an act of blatant self-dealing in gross violation of their fiduciary duties," and (4) the proposal is adverse to the interests of the Trust beneficiaries. The complainants,

5. As the U.S. Supreme Court has stated, however, "[a state court] does not acquire . . . jurisdiction by being the 'center of gravity' of the controversy, or the most con-

venient location for litigation." Hanson v. Denckla, 357 U.S. 235 at 254, 78 S.Ct. 1228 at 1240, 2 L.Ed.2d 1283 (1958).

defendants herein, sought, *inter alia*, a permanent injunction preventing those Trustees who were residents of New York from voting the shares of stock held by them as Trustees in favor of the proposals.

The activities of the defendant Joseph Albright, with their Illinois nexus, commencing in 1971 with his solicitation in Illinois of support for his candidacy as a Trustee from a number of Illinois Trustees and beneficiaries by personal visits, telephone calls and telegraph messages, and culminating with the March, 1973, letter to the Trustees in Illinois and the telephone call objecting to the proposed Trustee vote on the amendments, all evidence a serious and continuing concern for the proper management of the Trust and the Tribune Company.

■ A "key inquiry in cases where a nonresident defendant commits an act outside of Illinois which has resulting effects within this state, is whether the defendant had reason to anticipate that his .activities would have an effect . . . in Illinois." Jack O'Donnell Chevrolet, Inc. v. Shankles, 276 F.Supp. 998, 1002 (N.D.Ill.1967).[6] Mr. Albright could reasonably have anticipated that his demonstrated interest in the Trust affairs, followed by the written demand in which his mother, Josephine Albright, joined, calling upon the Trustees to withdraw the proposed amendments and postpone any action thereon, would lead to litigation in Illinois.

■ The question is whether the totality of these activities constitutes "minimum contacts" sufficient to submit the defendants to the jurisdiction of the court without offending "traditional notions of fair play and substantial justice". The existence of such contacts cannot be determined "by applying a formula or rule of thumb, but by ascer-

taining what is fair and reasonable in the circumstances of the particular situation." Hutter Northern Trust v. Door County Chamber of Commerce, *supra*, 403 F.2d at 484.

Furthermore,

"The test of whether business was transacted within the state must be applied in the context, not of communication and transportation criteria of yesteryears, but of modern day commercial and personal accelerated relationships. The long arm statutes are comrades of the computer." O'Hare Int'l. Bank v. Hampton, *supra* 437 F.2d at 1177.

Applying these principles to the admitted facts in this case, it is the court's opinion that the defendants have had sufficient "minimum contacts" with the McCormick-Patterson Trust in the State of Illinois to confer personal jurisdiction. In fact, all of the contacts which either of the defendants have had with the Trust, except for the suit filed by them in New York, have been centered in Illinois. The defendants have purposely availed themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Under these circumstances, there can be no offense to the traditional notions of fair play and substantial justice to require these two defendants to litigate their grievances in Illinois rather than in New York where neither of the defendants reside.

■ There is an additional reason why this suit can be maintained in Illinois. The controversy between plaintiffs and the two defendants directly involves a construction of the rights, powers and the duties of the plaintiffs as Trustees under the terms of the Mc-

---

6. Although the contemplation factor mentioned by the court in *Shankles* was set forth in the context of a tort case arising under Section 17(1)(b) of the Illinois long-arm statute, the same tests and inquiries are to apply to Section 17(1)(a) and (b) of the statute. See Ziegler v. Hodges, 80 Ill.App. 2d 210, 215, 224 N.E.2d 12, 14 (2d Dist. 1967); Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 254, 219 N.E.2d 646 (1st Dist. 1966).

Cormick-Patterson Trust Agreement. This Trust, which was created and is being administered in Illinois by the eight plaintiff-Trustees, has one hundred forty-five beneficiaries. Although the record does not contain the addresses of the beneficiaries, it can be assumed that they reside throughout the United States. All of the Trust assets, consisting of the shares of stock of the Tribune Company, are located in Illinois. The Tribune Company has its headquarters and principal place of business in Chicago, Illinois.[7] Illinois law will govern the substantive issues raised by the complaint.[8] With all of these factors present, Illinois clearly has a legitimate interest in affording plaintiffs access to its courts—either state or federal—to settle an existing controversy over the proper administration of the Trust located in Illinois.

The Supreme Court in Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), clearly recognized the strong interest of a state to provide a single forum to adjudicate the issues as to trusts located within the state and the conduct of trustees thereof. After rejecting the ancient jurisdictional distinctions between *"in personam"*, *"quasi in rem"*, and *"in rem"*, the Court in *Mullane* went on to say:

"[W]e do not rest the power of the State to resort to constructive service in this proceeding upon how its courts or this Court may regard this historic antithesis. It is sufficient to observe that, whatever the technical definition of its chosen procedure, the interest of each state in providing means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard." 339 U.S. at 312–313, 70 S.Ct. at 656.

In *Mullane* the Court was concerned only with the adequacy of notice by publication to the beneficiaries and held that the Fourteenth Amendment required more than this. The Court further stated:

"Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding. But the vital interest of the State in bringing any issues as to its fiduciaries to a final settlement can be served only if interests or claims of individuals who are outside of the State can somehow be determined. A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified."[9] 339 U.S. at 313–314, 70 S.Ct. at 657.

---

7. In addition, the Trust Agreement provides that in the event the beneficiaries are unable to agree upon a person to fill a vacancy in the office of Trustee, the vacancy "shall be filled by the Judge of the United States District Court for the Northern District of Illinois, Eastern Division, having the oldest commission upon application of any beneficiary hereunder."

8. In Central Standard Life Ins. Co. v. Gardner, 17 Ill.2d 220, 161 N.E.2d 278 (1959), a trustee brought suit to request instructions and to seek approval of the prior administration of the trust; the Illinois Supreme Court held:
"Since this trust was created by contract executed in Illinois, has been and is being administered in Illinois, and most of the trust beneficiaries reside in Illinois, the

trust situs is in Illinois. The situs of a trust is the place of performance of active duties of the trustee, (Campbell v. Albers, 313 Ill.App. 152, 39 N.E.2d 672) and all questions concerning trust administration are to be determined by the law of the situs." 17 Ill.2d at 237, 161 N.E.2d at 289.

9. The effect of the *Mullane* decision is thus analyzed in Scott on Trusts, § 568 at p. 3809:
"It would seem that not only in the case of a common trust fund but in the case of any trust, if the administration of the trust is fixed in a particular state, a court of that state has jurisdiction to determine not only what interests the beneficiaries have in the trust property which is within the state, but how far the trustee is or is not subject to personal liability to the

No problem of adequacy of notice exists here. The two defendants have been served with notice by personal service of summons as provided by Ill.Rev.Stat. ch. 110, §§ 14, 16. All other beneficiaries have been notified by the Trustees of the Albright objections to the proposed amendments and the intended filing by the Trustees of the present suit. In addition, the beneficiaries have been polled by the Trustees as to their views on the proposed amendments, with the result that beneficiaries owning 92.6% of the Trust's corpus are in favor of the proposed amendments and 3.4% are opposed.

The *Mullane* doctrine was recently applied in a diversity action brought in a Texas federal court for an accounting under a previous federal court judgment. The earlier judgment was held to have impressed a trust upon Texas land and conferred fiduciary responsibilities, including "the duty and obligation to account to and promptly pay" amounts owing under the earlier judgment, upon non-resident defendants who had been personally served outside of Texas. Gurley v. Lindsley, 459 F.2d 268, at 275 (5th Cir. 1972). In sustaining jurisdiction as to that portion of the judgment relating to the trust property and to the personal liability of one of the two non-resident beneficiaries, the court stated:

"Without regard to the technical distinctions that Texas may make between actions in rem, quasi in rem, and in personam, that state's interest in the administration and supervision of a Texas trust composed of Texas assets 'establish[es] beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure affords full opportunity to appear and be heard.' Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 872 . . ." Gurley v. Lindsley, 459 F.2d at 277.

These cases are sufficient to sustain a jurisdictional base in Illinois for the filing of this suit apart from the existence of minimal contacts on the part of the defendants within the state. If there is a location in the United States where it would be logical to maintain litigation affecting the Trust, its Trustees and its many beneficiaries,[10] Illinois clearly qualifies on every rational basis that can be suggested.

In addition, plaintiffs have in fact demonstrated that there were sufficient minimal contacts or activities on the part of the defendants directed to or within the State of Illinois to confer personal jurisdiction upon them.

Accordingly, defendants' motion to dismiss this action for lack of personal jurisdiction is denied.

---

beneficiaries for his administration of the trust, if the court has jurisdiction over the trustee, even though it does not have jurisdiction over the beneficiaries or some of them."

10. This court is of the opinion that the failure to join the other beneficiaries in this action does not require dismissal. Under Rule 19 of the Federal Rules of Civil Procedure, "equitable pragmatic considerations . . . should be controlling" in a determination whether to dismiss in this situation; the rule "calls for an effort to retain jurisdiction of the case where the interests of substantial justice require it . . . ." Rippey v. Denver United States Nat'l. Bank, 260 F. Supp. 704 (D.Colo.1966). First, a judgment rendered in the absence of other beneficiaries would not prejudice them, as the interests of all who might object to the Trustee's proposed vote are adequately represented by defendants' in this case. Moreover, if prejudice to the absent beneficiaries became apparent, the court could shape appropriate protective provisions. Secondly, the judgment to be rendered will be entirely adequate to dispose of the dispute. Finally, "plaintiffs who select the federal court in a diversity suit are exercising an important constitutional right which should not be lightly dismissed. Payne v. Hook, 74 U.S. (7 Wall.) 425, 429, 19 L.Ed. 260 . . . . ." Rippey v. Denver United States Nat'l. Bank, *supra* at 712.