# Illinois Official Reports

## Appellate Court

---

**Kaufman v. Barbiero, 2013 IL App (1st) 132068**

---

| | |
|---|---|
| Appellate Court Caption | GERALD S. KAUFMAN and GERALD S. KAUFMAN CORPORATION, a Delaware Corporation, Plaintiffs-Appellants, v. ANTHONY V. BARBIERO, Defendant-Appellee (Nanette Appel-Bloom and Alan S. Jacobs, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2068 |
| Filed<br>Rehearing denied | November 1, 2013<br>December 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the administration of a land trust holding a commercial building in Pennsylvania under the management of an Illinois trustee, the nonresident beneficiaries had sufficient minimum contacts with the State of Illinois that the exercise of personal jurisdiction over them by the State of Illinois did not offend federal due process; therefore, the trial court's dismissal of the suit for lack of personal jurisdiction was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-30537; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal      Roger B. Harris and Kelly Smith-Haley, both of Fox, Swibel, Levin & Carroll, LLP, of Chicago, for appellants.

James Hutchison, of Katen Muchin Rosenman, LLP, of Chicago, for appellee.

Panel      PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1  The circuit court of Cook County dismissed this suit solely against defendant Anthony V. Barbiero on the ground that it lacked personal jurisdiction over him. This appeal is based on only three facts, none of which are in dispute. The facts are that: (1) defendant is the beneficiary of a land trust; (2) the trust is administered in Illinois; and (3) defendant has no other contacts with the State of Illinois other than his ownership interest in a trust administered here. The issue on this appeal is solely a legal question. It is whether, by itself, an interest in a trust administered in Illinois may qualify as "minimum contacts" with the State of Illinois, such that the due process clause is not offended by haling a nonresident defendant into court here concerning that trust.

¶ 2  The Illinois long-arm statute specifically provides for personal jurisdiction over a nonresident defendant who owns "an interest in any trust administered within this State," where the cause of action concerns this interest. 735 ILCS 5/2-209(a) (West 2012). Since personal jurisdiction is specifically provided for by our state's long-arm statute, the only question before us is whether constitutional due process is also satisfied when the beneficiary's ownership interest in a trust administered here creates the beneficiary's only points of contact with our state.

¶ 3  We granted plaintiffs' motion to accelerate this appeal, an action which was also requested by defendant Barbiero. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 4  BACKGROUND

¶ 5 Since the trial court did not hold an evidentiary hearing to decide the jurisdictional issue, the only evidence before the trial court and the only evidence before us in the record on appeal consists of documentary evidence, such as the complaint and the affidavits submitted by both parties. We describe these documents in detail below.

## I. The Complaint

¶ 6

¶ 7 In the complaint, plaintiff trustee seeks to reform the trust agreement executed in 1959. The trust agreement denies the trustee the power to mortgage or sell the property without the written approval of all 600 beneficiaries. It is this provision which the trustee seeks to reform through this present action. This suit is brought as a class action, with the 600 beneficiaries compromising the class. There are three named class representatives: defendants Nanette Appel-Bloom, Alan S. Jacobs and Anthony V. Barbiero. All three named representatives have previously objected to the proposed reformation of the trust agreement. Of the three representatives, only defendant Barbiero has raised a jurisdictional challenge.

¶ 8 The complaint alleges that, in 1959, five individuals, including Benjamin Kaufman (father of Gerald, the present trustee), entered into an agreement with more than 600 beneficiaries for the purpose of purchasing the trust property. Under the 1959 agreement, the five original trustees agreed to hold the title to the trust property for the benefit of the beneficiaries, and the beneficiaries subscribed to beneficial ownership interests of $5,000 each, or fractions of that amount, in order to fund the $4.5 million purchase price of the property. The property, which is known as the "Terminal Commerce Building," is a large office and commercial building located at 401 North Broad Street in Philadelphia.

¶ 9 The trust agreement, which is attached to the complaint, states that all five original trustees reside in New York and that their office is in New York City. The agreement provides that the trustees will collect rents, keep full accounts and records, submit annual reports to the beneficiaries, retain attorneys and accountants as needed, maintain bank accounts for receiving and disbursing funds, and make distributions to the beneficiaries out of any surplus funds. Thus, from the inception of the trust, the trust property was located in one state (Pennsylvania), while the trustees were located in another state (New York).

¶ 10 The provision currently at issue states that the trustees "shall not sell or agree to sell, mortgage, encumber or transfer the real property or perform or cause to be performed any acts which will in any respect diminish or affect the title to the real property or create any liens, defects or encumbrances herein, other than as provided in the lease dated September 3, 1959, *** except upon the written direction of all" the beneficiaries. The complaint refers to this section as the "Written Approval Provision."

¶ 11 The complaint alleges that the reformation of the written approval provision is needed now because a mortgage on the property has matured and is currently in default, and the property is worth substantially more than the amount owed on the mortgage. However, the trustee is unable to pay the debt because he cannot mortgage or sell the trust property without the written approval of all 600 beneficiaries which, as a practical matter, is not possible to obtain.

¶ 12    The complaint alleges that, despite the written approval provision, between 1959 and 1978, the five original trustees entered into loans and mortgages, without the prior written approval of the beneficiaries.

¶ 13    In 1977, Gerald Kaufman succeeded his father, Benjamin Kaufman, as a successor trustee. In 1983, Benjamin Kaufman died, and the remaining four original trustees deeded the trust property to Gerald Kaufman as the sole successor trustee and signed an agreement conveying to him all their powers and authority under the 1959 trust agreement.

¶ 14    In 1983, when Kaufman became the sole trustee, he circulated a proposed agreement to the beneficiaries which, among other things, eliminated the written approval provision. The complaint alleges: that 511 beneficiaries, who hold approximately 90% of the beneficial interests under the trust, have approved and signed the proposed agreement; and that, of the remaining beneficiaries, "an estimated 45 are believed to be of an age and condition hindering them from being able to sign or otherwise decide" about the proposed agreement, and "another estimated 45 have not been located." The complaint alleges that "only four [beneficiaries], holding less than 1% of the beneficial interests," object to the proposal.

¶ 15    The complaint alleges that, as the prior trustees had previously done, Kaufman obtained "loans and grant[ed] mortgages on the Trust Property to secure the loans which were used to pay off previous loans secured by mortgage, again with notice to the Beneficiaries upon grant of the mortgages and without objection by any Beneficiary at the time." In 1999, Kaufman formed the Gerald S. Kaufman Corporation (Kaufman Corp.), a Delaware corporation, and transferred title to the trust property to the corporation.

¶ 16    Kaufman entered into three mortgages, including one in 1999 which matured by its terms on June 30, 2009, and which was then held by the Wells Fargo Bank. Wells Fargo signed a forbearance agreement with Kaufman Corp. in which Wells Fargo agreed not to pursue its remedies including foreclosure, with the right to cease forbearance any time after July 1, 2010, in return for the rent from the property and other payments. Wells Fargo subsequently assigned the 1999 mortgage to ARIC Capital Holdings, L.L.C. (ARIC), which is not currently seeking foreclosure.

¶ 17    In 2007, defendant Nanette Appel-Bloom, along with Ronald and Rita Appel, sued Kaufman, Kaufman Corp. and Norwest Bank (which was later acquired by Wells Fargo). All three individuals had inherited interests from two of the original beneficiaries, and their collective beneficial interest was less than 1%. The suit alleged that Kaufman and Kaufman Corp. lacked the authority to mortgage the property and thus the 1999 mortgage (subsequently held by Wells Fargo and ARIC) was invalid. The complaint in the case at bar alleges that this prior suit was "ultimately dismissed, chiefly on grounds of [statute of] limitations and laches [(*Appel v. Kaufman*, 728 F. Supp. 2d 684 (E.D. Pa. 2010))], and the dismissal was affirmed by the United States Court of Appeals for the Third Circuit [(*Appel v. Kaufman*, 481 F. App'x 774 (3d Cir. 2012))]." The complaint alleges that, "[a]s a consequence of the Appel-Bloom suit, potential lenders are unwilling to extend loans on the security of any mortgage [that Kaufman Corp.] might execute and title insurers are unwilling to insure the validity of the liens of any such mortgage." Also, in 2011, defendant Barbiero, who holds a beneficial interest of less than

- 4 -

1%, sent a letter to Kaufman stating that Kaufman lacked the authority to obtain mortgages on the trust property.

¶ 18                                     II. Defendant's Motion to Dismiss

¶ 19       On November 16, 2012, defendant Barbiero moved to dismiss plaintiffs' complaint for lack of personal jurisdiction. The motion was based primarily on an unpublished federal district case: *Trustees of the Central States, Southeast & Southwest Areas Health & Welfare Fund v. State Farm Mutual Automobile Insurance Co.*, No. 89 C 0435, 1991 U.S. Dist. LEXIS 13282 (N.D. Ill. Sept. 3, 1991). As we explain later in the analysis section of this opinion, this case has no precedential value.

¶ 20       In an affidavit attached to his motion, defendant Barbiero stated that he and his wife together owned 0.5% interest in the trust, which they have owned since 1964, and that he had resided in New York during this time. Barbiero stated that the original trustees resided in New York and administered the agreement from their office in New York, until "they resigned and appointed Kaufman, an Illinois resident." He stated that "a limited exchange of correspondence" occurred between Kaufman in Illinois and Barbiero in New York. However, payments by Kaufman as trustee to Barbiero and his wife were drawn on a New York bank; the accountants were "New York-based," and "all legal inquiries were directed to New York counsel."

¶ 21                                     III. Kaufman's Affidavit

¶ 22       In response to defendant's motion to dismiss, plaintiff Kaufman submitted an affidavit, in which he repeated most of the facts stated in the complaint and already set forth above. In addition, Kaufman stated that Kaufman Corp. has its principal offices in Chicago and that he has managed and administered the trust from his office in Chicago, performing such tasks as collecting rents, keeping accounts and records, retaining professionals as needed to perform tasks, maintaining bank accounts and making monthly distributions to the beneficiaries. He stated that, "[a]t all times since 1983, the Trust bank accounts have been maintained in Chicago, Illinois," and that currently the bank account is held at MB Financial Bank, located at 80 West Madison Street, Chicago, Illinois. Kaufman communicates with the beneficiaries regarding the trust property from his Chicago office.

¶ 23       Kaufman stated that, on May 24, 1983, he mailed a letter to all the beneficiaries, including defendant Barbiero and his wife, notifying them that he had become the sole trustee. The letter was accompanied by a proposed agreement which stated that "the principal place of business *** shall be at c/o Gerald S. Kaufman, 180 North Michigan Avenue, Suite 820, Chicago, Illinois 60601." Since 1983, 511 beneficiaries approved the agreement and returned the signature page to Kaufman, including Susan Barbiero, defendant's wife. The signature page with her signature was attached as exhibit to Kaufman's affidavit.

¶ 24       Kaufman stated that, since becoming trustee in 1983, he had "sent and received numerous letters and inquiries from Mr. Barbiero regarding the Trust and my administration" of it. The letters and emails described below are all attached to Kaufman's affidavit. On December 10,

2010, Barbiero emailed Kaufman and asked about the trust and Kaufman's administration of it. After Kaufman responded by email, Barbiero replied on January 18, 2011: "Thank you. You have answered my questions. Susan and I will agree to any authority that you need in order to re-finance, however, we do not favor changing" the agreement. On May 30, 2011, defendant Barbiero mailed a letter to Kaufman's Chicago office stating that Kaufman should submit a proposal to all beneficiaries concerning the refinancing and that, if any did not approve, Kaufman should petition a court for equitable relief. Immediately before filing this suit in August 2012, Kaufman mailed a draft of the proposed complaint to defendant Barbiero. In an email on August 15, 2012, defendant Barbiero then requested a copy of the original 1959 agreement, which Kaufman sent. During and after August 2012, Kaufman and Barbiero traded a number of emails regarding the lawsuit.

¶ 25   Kaufman stated that, on October 1, 2012, he directed his attorney to respond to inquiries from Barbiero for the names and addresses of the beneficiaries. The list was divided into two groups: those who had signed the proposed agreement; and those who had not. On October 15, 2012, Barbiero sent a letter entitled "Notice" to the beneficiaries who had not signed. According to Kaufman, Barbiero's letter "made numerous accusations about my administration of the trust, which were false." In addition, the letter asked each recipient to send $500 so that Barbiero could "raise a defense fund" of $50,000, and it stated that Barbiero had already retained a law firm with offices located in both New York and Chicago "to defend our interests." The letter stated: "Draw your check to the order of 'Katten Muchin Rosenman Terminal Commerce Litigation.' " The letter concluded with: "Please join me in this fight! Together we can defeat Mr. Kaufman." The letter also invited the recipients to view his blog on the Internet which is entitled "TerminalCommercialLitigation." Kaufman's affidavit states that Barbiero also established a website with the same name where he publishes accusations about Kaufman's administration of the trust.

¶ 26   Kaufman stated that, on December 5, 2012, Barbiero mailed a second letter to the beneficiaries entitled "An Open Letter," which he also posted on his website. Kaufman stated that this second letter also made false accusations about Kaufman's administration of the trust and asked for money. The letter also directs its recipients to view Barbiero's website: http://www.terminalcommercelitigation.com.

¶ 27                               IV. The Order Appealed From

¶ 28   On March 26, 2013, the trial court heard argument from counsel on defendant Barbiero's motion to dismiss for lack of personal jurisdiction. No witnesses were called, and the motion was decided on the documentary evidence described above. On May 30, 2013, the trial court issued a memorandum opinion granting defendant's motion. The trial court found that the trust was administered in Illinois but that Illinois lacked the minimum contacts needed to exert personal jurisdiction over defendant Barbiero. The trial court's opinion is discussed in more detail below in the analysis section. On June 24, 2013, the trial court issued an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding that there was no just reason to delay enforcement or appeal of the trial court's order of May 30, 2013, "dismissing this suit

as against defendant Barbiero for lack of personal jurisdiction." This appeal followed.

¶ 29                                                              ANALYSIS

¶ 30        On this appeal, plaintiffs argue that the trial court erred in holding that the State of Illinois lacked the minimum contacts needed to exercise personal jurisdiction over defendant Barbiero. As we noted above, we are asked to decide a purely legal question: whether, by itself, an interest in a trust administered in Illinois may provide the "minimum contacts" with the State of Illinois, such that the due process clause is not offended by haling a nonresident defendant into court here concerning that trust. For the following reasons, we conclude that defendant Barbiero has minimum contacts with Illinois, and we reverse the trial court's order and remand for further proceedings consistent with this opinion.

¶ 31                                                   I. Standard of Review

¶ 32        Since this is a purely legal question and none of the facts are in dispute, our standard of review is *de novo*. *People v. Jackson*, 2013 IL 113986, ¶ 15. In addition, in the case at bar, the trial court heard argument from counsel on the motion to dismiss but it did not hold an evidentiary hearing. When a trial court decides a jurisdictional question solely on documentary evidence and without an evidentiary hearing, as occurred in this case, our review is also *de novo. Russell v. SNFA*, 2013 IL 113909, ¶ 28. When a court considers whether it should exercise personal jurisdiction over a nonresident defendant, it is the plaintiff who bears the initial burden to establish a *prima facie* case for exercising that jurisdiction. *Russell*, 2013 IL 113909, ¶ 28. We will resolve any conflicts in the pleadings and affidavits in favor of the plaintiff seeking jurisdiction, "but the defendant may overcome [the] plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." *Russell*, 2013 IL 113909, ¶ 28. However, in the case at bar, there are no conflicts of fact.

¶ 33                                            II. The Illinois Long-Arm Statute

¶ 34        Section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2012)) is commonly referred to as "the Illinois long-arm statute" and it "governs the exercise of personal jurisdiction by an Illinois court over a nonresident." *Russell*, 2013 IL 113909, ¶ 29. "Historically, this court has employed a two-part analysis in deciding a jurisdictional issue under the long-arm statute, first determining whether a specific statutory provision of section 2-209 has been satisfied, and then determining whether the due process requirements of the United States and Illinois Constitutions have been met." *Russell*, 2013 IL 113909, ¶ 29 (citing *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990)).

¶ 35        The Illinois long-arm statute specifically provides that a person submits "to the jurisdiction of the courts of this State as to any cause of action arising from *** (13) [t]he ownership of an interest in any trust administered within this State." 735 ILCS 5/2-209(a)(13) (West 2012). In the case at bar, the trial court found that defendant Barbiero has an ownership in a trust and that the trust is administered in this state. Neither party disputes this finding or the fact that the cause of action arises from this ownership interest. Thus, there are no issues before us

concerning the Illinois long-arm statute, and we proceed to consider whether the due process clauses of the United States and Illinois Constitutions have been met.

¶ 36                                    III. Illinois Due Process Clause

¶ 37    Recently, the Illinois Supreme Court declined to consider "the extent, if any, that Illinois due process protections differ from federal due process protections on the issue of personal jurisdiction." *Russell*, 2013 IL 113909, ¶ 33. The supreme court declined to consider this question because "[d]efendant, as the party challenging personal jurisdiction here, does not argue that it is entitled to greater due process protections under the *Illinois due process clause* and long-arm statute." (Emphasis added.) *Russell*, 2013 IL 113909, ¶ 33.

¶ 38    Similarly, in defendant's brief to this court, defendant does not argue that the Illinois due process clause provides him with greater protections than the federal due process clause. Defendant's only reference to Illinois due process is in an observation in a footnote that, "[a]lthough some Illinois courts have deemed Illinois due process protections to be 'separate and independent' from federal due process protections, *** in practice the courts have focused on relevant federal due process concerns while noting that Illinois and federal due process concerns do not appear to diverge." Thus, we will consider the due process issue solely under the federal due process clause.

¶ 39                                    IV. Federal Due Process Clause

¶ 40    The due process clause of the federal constitution's fourteenth amendment sets the outer limits that a state's long-arm jurisdiction may reach. *Russell*, 2013 IL 113909, ¶ 34. Federal courts have interpreted this clause to require that a defendant must have certain minimum contacts with a forum state, such that the maintenance of a suit there against the defendant does not offend traditional notions of fair play and substantial justice. *Russell*, 2013 IL 113909, ¶ 34.

¶ 41    Minimum contacts are evaluated differently depending on whether the forum state is seeking to invoke general or specific jurisdiction over the defendant. *Russell*, 2013 IL 113909, ¶ 36. "A finding of general jurisdiction permits a cause of action against a defendant based on activity that is entirely distinct from its activity in the forum" and is based on continuous and systemic activity in the forum by the defendant. *Russell*, 2013 IL 113909, ¶ 36. In the case at bar, there are no claims that general jurisdiction applies. Thus, if the State of Illinois may extend jurisdiction over defendant Barbiero, it is only through specific jurisdiction.

¶ 42    "Specific jurisdiction requires a showing that the defendant purposefully directed its activities at the forum state and the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell*, 2013 IL 113909, ¶ 40 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Under specific jurisdiction, a nonresident defendant may be subjected to a forum state's jurisdiction based on certain 'single or occasional acts' in the state but only with respect to matters related to those acts." (Internal quotation marks omitted.) *Russell*, 2013 IL 113909, ¶ 40 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 318 (1945)). "[W]hen a nonresident defendant purposefully

derives [a] benefit from its interstate activities in other jurisdictions it would be unfair to allow that defendant to avoid any legal consequences that proximately arose from those same activities." *Russell*, 2013 IL 113909, ¶ 41 (citing *Burger King Corp.*, 471 U.S. at 473-74).

¶ 43                          V. Minimum Contacts and Trusts
¶ 44                          A. Cases Cited by the Parties
¶ 45        In plaintiffs' brief to this court, plaintiffs cite only one case involving long-arm jurisdiction and a trust: *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). In defendant's appellate brief, defendant cites two additional cases: (1) *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005 (2005); and (2) *Trustees of the Central States, Southeast & Southwest Areas Health & Welfare Fund v. State Farm Mutual Automobile Insurance Co.*, No. 89 C 0435, 1991 U.S. Dist. LEXIS 13282 (N.D. Ill. Sept. 3, 1991). We have located several more, including: (1) *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149 (7th Cir. 1979); (2) *Tankersley v. Albright*, 374 F. Supp. 530 (N.D. Ill. 1973) (cited with approval in *Tankersley v. Albright*, 514 F.2d 956, 967 n.24 (7th Cir. 1975) (appellate court reversed two subsequent orders in the *Tankersley* litigation but stated that the first one, concerning personal jurisdiction, was "excellent")); and (3) *Ohlheiser v. Shepherd*, 84 Ill. App. 2d 83 (1967). Since there are only a few relevant cases, we describe them in detail below.

¶ 46        However, before we discuss the relevant cases, we observe that one of the cases cited by the parties,[1] *Trustees of the Central States*, is an unpublished 1991 opinion from the United States District Court for the Northern District of Illinois. Although the local rules of the federal district court do not address the precedential value of their unpublished opinions, the Circuit Rules of the Seventh Circuit Court of Appeals provide some guidance, and they state that no unpublished order issued before January 1, 2007, may be cited except to support a claim of preclusion or to establish the law of the case. 7th Cir. R. 32.1(d) (eff. Jan. 1, 2007). See also Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) (permitting the citation of unpublished opinions only if they were issued after January 1, 2007). Illinois Supreme Court Rule 23 also prohibits the citation of unpublished opinions, except to support a claim of "double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2011). Thus, we will not consider this case in our analysis.

¶ 47        We observe that, in the case at bar, the trial court relied primarily on this unpublished case in reaching its holding. In its memorandum opinion, the trial court set forth the "principles" as laid out in *Trustees of the Central States* and then concluded: "Applying these principles, the Court finds that Plaintiffs have not established that [defendant] Barbiero had sufficient minimum contacts." Kaufman v. Appel-Bloom, No. 2012-CH-30537, slip op. at 8 (Cir. Ct. Cook Co. May 30, 2013). The trial court's reliance on an opinion that lacks precedential value undermines its own holding.

¶ 48                          B. Relevant Precedent

---

[1] In defendants' brief to this court, defendants argue that "the Circuit Court correctly followed the federal district court's decision in *Trustees of Central States*."

¶ 49 Although not a trust case, *International Shoe* was the seminal case which established "minimum contacts" as the yardstick against which the constitutionality of long-arm jurisdiction was to be measured. In 1945, the United States Supreme Court stated in *International Shoe* that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

¶ 50 In 1950, five years after *International Shoe*, the United States Supreme Court decided *Mullane v. Central Hanvover Bank & Trust*, 339 U.S. 306 (1950), which is discussed at length by both parties to this appeal. In *Mullane*, the Central Hanover Bank established "a common fund." *Mullane*, 339 U.S. at 308. Under New York state statute, a trust company was permitted, "with approval of the State Banking Board, [to] establish a common fund and, within prescribed time limits, [to] invest therein the assets of an unlimited number of estates, trusts or other funds of which it is trustee." *Mullane*, 339 U.S. at 308-09. Beneficiaries would benefit because they would obtain a "diversification of risk and economy of management" that would not normally be "extended to those whose capital standing alone would not obtain such advantage." *Mullane*, 339 U.S. at 308.

¶ 51 In *Mullane*, the bank pooled together into a common fund 113 trusts, of which it was trustee, and notified the beneficiaries, some of whom were not residents of New York. *Mullane*, 339 U.S. at 309. One nonresident challenged New York's jurisdiction over him as a violation of federal due process, and this litigation followed. *Mullane*, 339 U.S. at 311. The United States Supreme Court observed that this was "a challenge to the power of the State–the right of its courts to adjudicate at all as against those beneficiaries who reside without the State of New York." *Mullane*, 339 U.S. at 311. The Court stated that it did not matter whether a state chose to characterize this type of litigation as *in rem* or *in personam* jurisdiction, because the result would be the same. "[W]hatever the technical definition of [a state's] chosen procedure, the interest of each state in providing [a] means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond [a] doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard." *Mullane*, 339 U.S. at 313.

¶ 52 Although *Mullane* was decided only five years after *International Shoe*, *Mullane* did not mention minimum contacts at all and decided the issue on a completely different basis–the right of the state to decide issues related to its trusts. The *Mullane* Court did not consider whether a beneficiary's ownership interest in a trust administered in the forum state created minimum contacts with that state, as defined by *International Shoe*.

¶ 53 Eight years after *Mullane*, the United States Supreme Court decided *Hanson v. Denckla*, 357 U.S. 235 (1958), which again concerned a trust and long-arm jurisdiction. Although the case involved jurisdiction over a trustee rather than over a beneficiary, the case is still instructive because it shows the factors that the Court found important in determining whether minimum contacts existed. In *Hanson*, the Court held that the State of Florida lacked personal

jurisdiction over a Delaware trustee, although the trustee was appointed in Florida, but where the trust was not administered in Florida, where its assets were not held in Florida, and where the trustee took no other actions in Florida on which to base jurisdiction. *Hanson v. Deckla*, 357 U.S. at 251-52. Thus, the location of the administration of the trust was a significant factor, but the place of appointment was not.

¶ 54    Nine years after *Hanson*, this court decided *Ohlheiser v. Shepherd*, 84 Ill. App. 2d 83 (1967). Although the *Ohlheiser* opinion set forth the facts and holding of *Hanson*, it then concluded that *Hanson* was not "controlling here," without any explanation why. *Ohlheiser*, 84 Ill. App. 2d at 87-88, 90. The court then proceeded to reach the exact opposite holding from *Hanson*: that the place of appointment of a trustee was dispositive in deciding whether a court had personal jurisdiction over the trustee. *Ohlheiser*, 84 Ill. App. 2d at 90-91.

¶ 55    The *Ohlheiser* court held that the Wisconsin trustee's sole act of accepting an appointment as trustee from an Illinois court was a "sufficient contact with the State of Illinois" to subject him to personal jurisdiction here and satisfy due process. *Ohlheiser*, 84 Ill. App. 2d at 93. The trust property consisted of shares of stock, and the court acknowledged that the trustee could "step across the state line with the portable trust assets in his pocket." *Ohlheiser*, 84 Ill. App. 2d at 91. The trustee's only acts were to receive and send dividend checks and tax returns by mail, which were acts presumably done by him in Wisconsin; and all the beneficiaries consented to the appointment of this nonresident trustee. *Ohlheiser*, 84 Ill. App. 2d at 89. Like *Ohlheiser*, *Hanson* also involved a testamentary trust and a nonresident trustee. However, *Hanson* specifically rejected the conclusion reached in *Ohlheiser*, stating that "[i]f such a basis of jurisdiction were sustained, probate courts would enjoy nationwide service of process." *Hanson*, 357 U.S. at 248. Since *Ohlheiser* conflicts with *Hanson*, without offering any explanation of why it concluded that binding United States Supreme Court precedent was "not controlling," we do not find *Ohlheiser* persuasive.

¶ 56    Several years after *Ohlheiser*, a federal district court in Illinois decided *Tankersley v. Albright*, 374 F. Supp. 530 (N.D. Ill. 1973). Although this opinion was not appealed to the Seventh Circuit Court of Appeals, a subsequent order in the case was, which gave the Seventh Circuit the opportunity to cite with approval "the trial court's excellent analysis of the *Mullane* doctrine" contained in the trial court's earlier opinion. *Tankersley v. Albright*, 514 F.2d 956, 967 n.24 (7th Cir. 1975).

¶ 57    *Tankersley* is completely on point with our case. Like the case at bar, the question in *Tankersley* was whether Illinois had long-arm jurisdiction over two nonresident beneficiaries of a trust administered in Illinois. *Tankersley*, 374 F. Supp. at 531. Similar to the case at bar, the trustees in *Tankersley* had instituted an action in Illinois for a declaratory judgment after two nonresident beneficiaries had objected to the trustees' proposed management actions. *Tankersley*, 374 F. Supp. at 531-33. The *Tankersley* court held that "there were sufficient minimal contacts on the part of the defendants directed to or within the State of Illinois to confer personal jurisdiction upon them." *Tankersley*, 374 F. Supp. at 537.

¶ 58    *Tankersley* differs slightly from our case, in that the trust property consisted of shares of stock and the Illinois legislature had not yet enacted subsection (13) of the Illinois long-arm

- 11 -

statute, which specifically provides for jurisdiction for trusts administered here. However, the enactment of the state statute does not affect our analysis of federal due process.

¶ 59    The *Tankersley* court held that the nonresident defendant beneficiaries could have reasonably anticipated that their interest in and objections to the administration of the trust being managed by the plaintiff trustees in Illinois would lead to litigation in Illinois and subject them to jurisdiction here. *Tankersley*, 374 F. Supp. at 535 (defendants' acts "all evidence a serious and continuing concern for the proper management" of the trust in Illinois). Like the Seventh Circuit did (*Tankersley*, 514 F.2d at 967), we find this reasoning persuasive.

¶ 60    A few years after *Tankersley*, the Seventh Circuit decided *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1152 (7th Cir. 1979), in which the Seventh Circuit once again noted the district court's " 'excellent' " analysis in *Tankersley*. Like both *Tankersley* and the case at bar, *Peoples Bank*[2] concerned whether an Illinois state court could exercise long-arm jurisdiction over nonresident beneficiaries of a trust, and the court held jurisdiction was proper. *Peoples Bank*, 594 F.2d at 1151-52. In *Peoples Bank*, the district court had required the joinder of two California beneficiaries and then dismissed the action for lack of diversity once the two were joined. *Peoples Bank*, 594 F.2d at 1150. On appeal, the Seventh Circuit stated that, before affirming the joinder and dismissal, it had to consider whether plaintiff could bring suit in another court. *Peoples Bank*, 594 F.2d at 1151. The Seventh Circuit upheld the joinder and dismissal, only after first concluding that an Illinois state court could exercise long-arm jurisdiction over the two California beneficiaries of the trust. The Seventh Circuit stated: "Asserting jurisdiction over a nonresident beneficiary to adjudicate claims relating to a trust located in Illinois and administered by an Illinois trustee satisfies that requirement [of minimum contacts]." *Peoples Bank*, 594 F.2d at 1152.

¶ 61    With *Mullane* and *Tankersley*, *Peoples Bank* made at least the third federal case after *International Shoe* to permit a forum to assert long-arm jurisdiction over nonresident beneficiaries in order to adjudicate claims related to a trust administered in that forum.

¶ 62    The parties also cite and discuss *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005 (2005), although the issue in that case was very different from ours. The trust in *Sullivan* was administered in Illinois and its trustee resided in Illinois, during the time when the fraudulent transfers alleged by the plaintiff took place and when the plaintiff filed his lawsuit. *Sullivan*, 359 Ill. App. 3d at 1012. However, after the lawsuit began, the trustee was then succeeded by another trustee who did not reside in Illinois. *Sullivan*, 359 Ill. App. 3d at 1007. Thus, the issue in that case was whether the predecessor trustee's acts were sufficient to confer personal jurisdiction over the successor nonresident trustee. *Sullivan*, 359 Ill. App. 3d at 1010. We held that they were, reasoning that at the time the successor trustee was appointed, the Illinois litigation was well under way. *Sullivan*, 359 Ill. App. 3d at 1013. "It should have occurred" to the successor trustee that the trust "would likely be subjected to the pending litigation." *Sullivan*, 359 Ill. App. 3d at 1013. Thus, "requiring [the] foreign [successor] trustee to litigate in Illinois" did "not offend traditional notions of fair play and substantial justice." *Sullivan*, 359 Ill. App. 3d at

---

[2]We are abbreviating the case name as *Peoples Bank* rather than as *Hansen*, in order to avoid any confusion with the United States Supreme Court case of *Hanson v. Deckla*, 357 U.S. 235 (1958).

1013.

¶ 63                                    C. Application to Our Case

¶ 64        The precedent, discussed above, establishes that exercising personal jurisdiction over the nonresident beneficiaries in the case at bar comports with federal due process. First, *Mullane*, as a decision of the United States Supreme Court, is binding precedent with respect to federal due process, and it squarely holds that a forum state may exercise personal jurisdiction over nonresident beneficiaries to a trust administered in the forum state. *Mullane*, 339 U.S. at 313. Although *Mullane* is over 60 years old, "the *Mullane* doctrine" still continues to be cited as binding precedent for this point of law. *E.g.*, *Tankersley*, 514 F.2d at 967 n.24 (citing "the *Mullane* doctrine"); *Peoples Bank*, 594 F.2d at 1152 (subsequent "minimum contacts" decisions have "not displace[d] the Supreme Court's conclusion in [*Mullane*]"). See also *Hanson*, 357 U.S. at 251-52 (the location of the administration of the trust was a significant factor in deciding that a court lacked personal jurisdiction over a nonresident trustee).

¶ 65        Second, although *Mullane* did not expressly discuss the concept of minimum contacts, at least two subsequent federal opinions did and still held that a forum state may assert long-arm jurisdiction over nonresident beneficiaries in order to adjudicate claims related to a trust administered in that forum. *Peoples Bank*, 594 F.2d at 1152 (minimum contacts were satisfied where a forum state exercised jurisdiction "over a nonresident beneficiary to adjudicate claims relating to a trust located in Illinois and administered by an Illinois trustee"); *Tankersley*, 374 F. Supp. at 537.

¶ 66        Third, the federal district case of *Tankersley* is completely on point with our case and, like the Seventh Circuit did, we find its reasoning persuasive. *Tankersley*, 514 F.2d at 967 n.24 (noting "the trial court's excellent analysis of the *Mullane* doctrine" and citing *Tankersley*, 374 F. Supp. at 535-37). Almost exactly like our case, the trustees in *Tankersley* instituted an action in Illinois for a declaratory judgment after two nonresident beneficiaries objected to the trustees' proposed management actions. *Tankersley*, 374 F. Supp. at 531-33. Holding that jurisdiction existed over the nonresident defendants, the court stated that they must have reasonably anticipated that their interest in the administration of the trust managed by Illinois trustees, and their objections to it, would lead to litigation in Illinois and subject them to jurisdiction here. *Tankersley*, 374 F. Supp. at 535.

¶ 67        This same reasoning was echoed in *Sullivan*, where this court held that "[it] should have occurred" to the nonresident trustee that he would likely be subject to litigation in Illinois when management decisions by the prior Illinois trustee were already at issue. *Sullivan*, 359 Ill. App. 3d at 1013.

¶ 68        Similar to the defendants in *Tankersley* and *Sullivan*, it should have occurred to defendants in the case at bar–when an Illinois trustee was appointed back in 1983 and when all subsequent administration of the trust was then going to occur in Illinois–that they could reasonably be drawn into litigation in Illinois if they objected to that Illinois administration. Defendant Barbiero states in his affidavit that the trust was administered in New York until 1983 when the original trustees resigned and appointed Kaufman, an Illinois resident, as the sole trustee. Defendant does not state that he objected to the appointment of Kaufman as sole trustee,

- 13 -

although defendant had to realize that the administration of the trust would then likely shift from New York to Illinois. At that point, defendant should have expected that, if he voiced objections to the Illinois administration of the trust, he would likely be haled into court here. With this knowledge, he nonetheless proceeded to object to the Illinois trustee's proposed actions. As a result, the State of Illinois had sufficient minimum contacts with defendant to exercise personal jurisdiction over him.

¶ 69 Defendant's brief poses the following hypothetical: what if Kaufman moved to Alaska? Would personal jurisdiction follow Kaufman to Alaska? However, Kaufman has not moved to Alaska. He has remained in the same forum since his appointment in 1983. Thus, this hypothetical is not before us. On the facts before us, it is reasonable for the State of Illinois to exert personal jurisdiction over defendant nonresident beneficiaries.

¶ 70 CONCLUSION

¶ 71 For the foregoing reasons, we conclude that the nonresident defendant beneficiaries had sufficient minimum contacts with the State of Illinois, such that this State's exercise of personal jurisdiction over them did not offend federal due process. The trial court order to the contrary is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

¶ 72 Reversed and remanded.