# Illinois Official Reports

## Appellate Court

---

### *Silver v. Horneck*, 2021 IL App (1st) 201044

---

| | |
|---|---|
| Appellate Court Caption | ELIZABETH SILVER, Plaintiff-Appellant, v. PETER HORNECK, as Trustee of the Robert D. Silver Revocable Trust, Dated November 10, 1993, and the Corrinne K. Silver Revocable Trust, Dated November 10, 1993, and GEOFFREY SILVER, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-20-1044 |
| Filed | October 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2019-CH-13785; the Hon. Pamela McLean Meyerson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel S. Ebner, of Prather Ebner LLP, of Chicago, for appellant.<br><br>Peter E. Cooper, of Lawrence Kamin, LLC, of Chicago, for appellee Peter Horneck.<br><br>Jonathan R. Cantrell, of Hart Cantrell LLC, of Benton, for other appellee. |

JUSTICE MIKVA delivered the judgment of the court, with opinion. Justices Harris and Oden Johnson concurred in the judgment and opinion.

## OPINION

¶ 1        Seeking an accounting and to enforce certain provisions of two trusts established by her now-deceased parents, the plaintiff in this case, a resident of Florida, sued her brother and co-beneficiary, a resident of Washington, and her cousin, who serves as trustee of the trusts and resides in Colorado. The circuit court concluded that it lacked personal jurisdiction over these nonresident defendants and dismissed the complaint with prejudice pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2018)). Maintaining that the court had both general and specific jurisdiction over the defendants, the plaintiff now asks us to reverse that ruling and remand the case for further proceedings. For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3        The pleadings, affidavits, and documentary evidence considered by the circuit court during the extensive briefing and argument in this matter established the following facts.

¶ 4        Robert and Corrinne Silver were married and lived in Illinois for many years. With the assistance of their Illinois attorney, Raymond Saunders, they executed the Robert D. Silver Revocable Trust, dated November 10, 1993 (Robert's Trust), and the Corrinne K. Silver Revocable Trust, dated November 10, 1993 (Corrinne's Trust) (collectively, the Trusts). Robert and Corrinne's children, plaintiff Elizabeth Silver and defendant Geoffrey Silver, are the surviving beneficiaries of both trusts. Elizabeth resides in Florida, and Geoffrey, though a longtime resident of Oregon, now resides in Washington.

¶ 5        Robert amended his trust in 1998 to give Corrinne the power to nominate a successor trustee, including herself, in the event of his incapacity or death and to distribute the assets of his trust in her will. Pursuant to these amendments, Corrinne began acting as the successor trustee of Robert's Trust, following his death on April 4, 2000.

¶ 6        Corrinne executed several amendments to her own trust between 2007 and 2012. As amended, it provided that if Geoffrey and Elizabeth both survived Corrinne, certain assets should first be transferred to Elizabeth and the remaining assets distributed in equal parts to Elizabeth's and Geoffrey's respective trusts. Pertinent to the parties' underlying dispute, Article III, section (c) of Corrinne's Trust also provided that if there was any delay in the distribution of trust assets, the trustee was to pay Elizabeth's "current expenses, including without limitation, repairs, maintenance and capital improvements for [Elizabeth's] residence" from the principal of Corrinne's Trust and that any such payments should not be considered advancements of Elizabeth's one-half share.

¶ 7        In a final amendment to her trust executed on September 13, 2012, and in a separate designation with respect to Robert's Trust executed the same day, Corrinne named her grandnephew, defendant Peter Horneck, as the successor trustee of both Trusts in the event that she ceased to act as trustee. Corrinne also named Mr. Horneck as the executor of her estate.

¶ 8     Sometime in 2014, Corrinne moved from Illinois to Florida, where she continued to serve as trustee of the Trusts. On July 2, 2015, however, Corrinne resigned as trustee and, pursuant to her designation of him on September 13, 2012, Mr. Horneck, a resident of Colorado, began acting as successor trustee for the Trusts.

¶ 9     In February 2017, Mr. Horneck petitioned a Florida probate court for the appointment of an emergency temporary guardian for Corrinne. Corrinne passed away just over two months later, on April 22, 2017.

¶ 10    Several days after Corrinne's passing, Mr. Horneck sent an e-mail to Elizabeth and Geoffrey, expressing his condolences and apprising them of steps he was taking to settle Corrinne's affairs as expeditiously as possible. He informed them that he had retained an Illinois attorney "to make sure the estate [was] settled legally according to Illinois law where the trusts and will were written" and who could put him in touch with Mr. Saunders, the individual most familiar with the trust and estate documents. Mr. Horneck also retained Michael Crowe, an Illinois accountant who had previously been retained by Corrinne, "to assist with any taxes due from the estate or accounting issues that [might] arise."

¶ 11    The following month, Mr. Horneck e-mailed Elizabeth and Geoffrey again to inform them that he had decided it was in the best interests of the estate for him to retain Mr. Saunders directly, because of his "long history with [their] family and its assets," because Mr. Saunders "clearly was trusted by [their] parents," and because in Mr. Horneck's conversations with him, Mr. Saunders had been "helpful, candid, and supportive."

¶ 12    On May 19, 2017, Elizabeth's Florida counsel wrote to Mr. Saunders, asking him to "[p]lease advise as to [his] position regarding future communications with Mr. Horneck"— whether Mr. Saunders preferred that future correspondence be sent directly to him in Illinois or to Mr. Horneck in Colorado with a copy to Mr. Saunders. Elizabeth's counsel also asked, "since *** Corrinne Silver established her domicile in Florida in 2014," if "the estate and trust administration [was] going to be handled in Florida."

¶ 13    Elizabeth's Florida counsel then wrote directly to Mr. Horneck on June 16, 2017, seeking "remittance/payment of Elizabeth's current expenses of $14,739.26" under section III(a)(2) of Corrinne's Trust. On June 23 or July 23, 2017 (both dates appear in the record), Mr. Horneck sent Elizabeth a check for $50,000. Elizabeth elected not to cash the check, however, because she understood that Geoffrey had received an identical payment and insisted that any regular distribution made prior to the payment of her predistribution expenses was premature. Elizabeth was advised to communicate with Mr. Horneck on this and other matters through Mr. Saunders.

¶ 14    From 2017 to the filing of this lawsuit in 2019, Elizabeth and her Illinois counsel did in fact correspond with Mr. Saunders on numerous occasions regarding Elizabeth's continued requests for payment of her predistribution expenses, her eventual demand for an accounting of Mr. Horneck's activities as trustee, and other, non-trust matters relating to Corrinne's estate. Through these exchanges, Elizabeth was ultimately provided with tax returns, investment account statements, and check registers for the Trusts. Mr. Saunders also explained that Elizabeth's right to payment of her expenses under Corrinne's Trust was "not as simple and as clear" as her lawyer believed it to be, both because there had been no real delay before the first distribution checks were issued and because Elizabeth had provided no supporting documentation for her claimed expenses. Mr. Saunders proposed, on behalf of Mr. Horneck, that Elizabeth could preserve her claim for predistribution expenses while still authorizing the

distribution of the remaining trust assets. Elizabeth appears not to have agreed to such a proposal.

¶ 15    Later exchanges indicate that the check for $50,000 was reissued to Elizabeth on March 12, 2019, and this time she did cash it. Geoffrey and Elizabeth were encouraged to agree on a plan for distribution of the remaining assets.

¶ 16    What negotiations occurred were unsuccessful, however, and Elizabeth filed her complaint in this matter on November 27, 2019. In it, she alleged that during the 2½ years following her mother's death, she had repeatedly and unsuccessfully sought payment of her predistribution expenses from Corrinne's Trust and had initially rejected a partial distribution of trust assets to both her and Geoffrey because she felt it failed to comply with Corrinne's wish that Elizabeth's expenses be paid "off the top." Elizabeth alleged that Mr. Horneck had breached his fiduciary duties to her as a beneficiary of the Trusts. She sought an accounting of his actions as trustee, payment of her unreimbursed expenses (by then totaling $597,064.74), and a final distribution of trust assets.

¶ 17    Elizabeth asserted in her complaint that the circuit court had jurisdiction over this case "because it involve[d] trusts governed by Illinois law with *situs* in Illinois." As support for her assertion that the trust *situs* was Illinois, Elizabeth relied on the following language included at article VIII, paragraph (c), of Robert's Trust and article VII, paragraph (c), of Corrinne's Trust (referred to hereinafter as paragraph (c)):

> "*Illinois Law Governs;* Situs *and Administration of Trusts; Substitute Trustees*. The validity and effect of each trust created hereunder is governed by Illinois law. The *situs* of any trust created hereunder may, however, be transferred at any time or times to such place or places as the Trustees deem to be for the best interests of such trust."

¶ 18    Defendants disagreed with Elizabeth's reading of this provision. In their motions to dismiss her complaint for a lack of personal jurisdiction under section 2-301 of the Code (735 ILCS 5/2-301(a) (West 2018)), they argued that the above language provided only that Illinois law would apply for purposes of interpreting the trust instruments and that the *situs* of the Trusts could be changed. It did not, in their view, designate a particular place where the Trusts were to be administered. Citing Illinois law holding that a trust's *situs* is the place where the trustee actively performs his or her trust administration duties, defendants asserted that the Trusts' *situs* had been Illinois when it was administered by Corrinne in Illinois but changed when it was then administered by Corrinne in Florida and changed again when it was administered by Mr. Horneck in Colorado.

¶ 19    Mr. Horneck submitted an affidavit in support of his motion averring that, at all relevant times, he had been a resident of Colorado, he did not regularly travel to or conduct business in Illinois, and he owned no property in Illinois. Mr. Horneck stated that he began acting as trustee of the Trusts on or about July 2, 2015, and since that time had "conducted all trust administration from [his] home or office in Colorado," including investing trust assets and monitoring those investments, paying trust expenses and bills, and making distributions to the Trusts' beneficiaries in accordance with the terms of the trust instruments. According to Mr. Horneck, at no relevant time had the Trusts held any personal property or real estate located in Illinois. Rather, the Trusts' assets were intangible, consisting primarily of cash, investment accounts, and nontraded or restricted securities or membership interests. Prior to March 2019, when these assets were distributed to Elizabeth and Geoffrey, Richard's Trust had also held shares in Otto Engineering, Inc., an Illinois corporation, and membership units in 10 West

Main, LLC, a Delaware limited liability company with offices in Illinois. But as trustee, Mr. Horneck was never involved in the management of either company. Mr. Horneck maintained that he had accepted the position of trustee subject to his then-current residence, that nothing in the terms of the trust instruments required him to move to either Florida or Illinois to administer the Trusts, and that Elizabeth, who was his cousin, was fully aware at all relevant times that he was a resident of Colorado.

¶ 20     Geoffrey confirmed in his own affidavit that he communicated with Mr. Horneck "on a regular basis" and it was his understanding that "the vast majority of the transactions related to the Trusts at issue [had] taken place over the last four years or more" in Colorado, where Mr. Horneck had "managed both [Trusts] consistently since 2015."

¶ 21     Elizabeth argued in response that Illinois courts had jurisdiction over defendants because the Trusts were administered in Illinois. Specifically, Elizabeth argued that jurisdiction was proper "under the test established by the (newly enacted) Illinois Trust Code." Section 108(a) of the Trust Code now provides that language in a trust instrument specifically designating a principal place of administration will be honored so long as any portion of the trust's administration actually occurs there. 760 ILCS 3/108(a) (West 2020). Elizabeth argued that paragraph (c) of the trust instruments at issue here did in fact designate Illinois as the *situs* or principal place of administration for the Trusts. She also argued that Mr. Horneck had never taken steps to relocate the Trusts to Colorado. Doing so, she insisted, would have required him to observe certain formal requirements, including providing her with notice, filing Colorado tax returns, and registering the Trusts in Colorado. Nor, according to Elizabeth, would such a move have been in the best interests of the Trusts because it would have resulted in certain undesirable tax consequences.

¶ 22     Although she maintained that section 108(a) of the Trust Code obviated any need for the court to consider the common law factors usually employed to determine a trust's principal place of administration, Elizabeth argued in the alternative that those factors—(1) the provisions of the trust instrument, (2) the residence of the trustee(s), (3) the residence of the beneficiaries, (4) the location of trust assets, and (5) the location where the business of the trust is to be conducted—also weighed in favor of a finding that Illinois courts had personal jurisdiction over defendants in this case. She pointed out that, for most of their existence, significant trust assets had included ownership interests in two closely held companies located in Illinois. And she noted that Mr. Horneck had hired legal counsel in Illinois to represent him in his fiduciary capacity and to communicate with the beneficiaries of the Trusts as well as an Illinois accountant to prepare Illinois tax returns.

¶ 23     For all of the same reasons that specific jurisdiction was established, Elizabeth argued that the circuit court could also exercise general jurisdiction over defendants.

¶ 24     Elizabeth submitted several affidavits highlighting, among other things, the fact that she had been instructed to communicate with Mr. Horneck exclusively through Mr. Saunders.

¶ 25     Mr. Horneck, Mr. Saunders, and Mr. Crowe all filed affidavits in response to Elizabeth's arguments and in support of dismissal. Mr. Horneck averred that Mr. Crowe had been engaged, first by Corrinne and then by Mr. Horneck, to provide "limited accountancy and tax preparation services." Mr. Saunders was likewise retained to "provide[ ] legal advice in connection with the Trusts." According to Mr. Horneck, neither individual was ever involved with the actual administration of the Trusts, which Mr. Horneck "personally handled in Colorado."

¶ 26    Recalling some tax advice he had provided early in Mr. Horneck's tenure as successor trustee, Mr. Crowe stated in his affidavit that he had first "confirmed [his] understanding that Mr. Horneck, as Trustee of the Trusts, was administering the Trusts in Colorado." Noting both that Corrinne, who was the sole beneficiary at that time, was located in Florida and that "a substantial portion of the Trusts' assets and earnings originated in Illinois," Mr. Crowe had then observed "that the State of Colorado might assert that the Trustee, because he resided in Colorado, had an obligation to file a trust tax return." However, Mr. Crowe advised against incurring this additional burden because there would be no taxable income in Colorado and the trust assets would be distributed shortly. The memo in which Mr. Crowe memorialized these recommendations does not appear in the record, but e-mails referencing the memo do appear, and they indicate that the memo was sent as an attachment to both Mr. Horneck and to Elizabeth, who acknowledged having received it. In accordance with this advice, Mr. Crowe prepared Illinois tax returns listing the Trusts as nonresident trusts and giving Mr. Horneck's home address in Colorado as the Trusts' address.

¶ 27    Following oral argument, the circuit court concluded that it lacked personal jurisdiction over defendants and granted their motions to dismiss Elizabeth's complaint. The court began by noting that Elizabeth, as the plaintiff, bore the initial burden of establishing a *prima facie* case of personal jurisdiction over the nonresident defendants. Elizabeth had sought to do so by establishing, under section 2-209(a)(13) of the Illinois long-arm statute (735 ILCS 5/2-209(a)(13) (West 2018)), that the Trusts were administered in Illinois. Having considered the relevant factors, however, the court concluded that the trusts "were not administered in Illinois for purposes of Section [2-209(a)(13)]." Nor, in the court's view, was there "any other basis to find specific jurisdiction." The court likewise concluded that Elizabeth had failed to make a *prima facie* showing of general jurisdiction—that defendants had the sort of continuous and systematic contacts that could subject them to litigation in Illinois over matters unrelated to those contacts.

¶ 28    This appeal followed.

¶ 29                              II. JURISDICTION

¶ 30    The circuit court entered its final judgment dismissing this case for lack of personal jurisdiction on September 4, 2020, and Elizabeth timely filed her notice of appeal on October 2, 2020. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 31                              III. ANALYSIS

¶ 32    Section 2-301 of the Code provides that

        "a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding." 735 ILCS 5/2-301(a) (West 2018).

¶ 33    In deciding such a motion, "the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested

issues of fact." *Id.* § 301(b). It is the plaintiff's burden to establish a *prima facie* basis for the court to exercise personal jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. The burden then shifts to the defendant to offer uncontradicted evidence defeating jurisdiction. *Id.* Conflicts in the pleadings and affidavits are resolved in the plaintiff's favor. *Id.* Where, as here, the jurisdictional question has been decided solely on pleadings and documentary evidence, our review is *de novo*. *Id.*

¶ 34    There are two types of personal jurisdiction that a court may assert over a nonresident defendant. General jurisdiction, described by our supreme court as "all-purpose" jurisdiction (*Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 14), "permits a cause of action against a defendant based on activity that is entirely distinct from [the defendant's] activity in the forum" (*Russell*, 2013 IL 113909, ¶ 36). Specific jurisdiction, as its name suggests, exists where there has been a showing "that the defendant purposefully directed its activities at the forum state" and that the cause of action "arose out of or relates to" those specific contacts with the forum state. *Id.* ¶ 40. Due process establishes the outer boundaries of a court's ability to exercise either type of personal jurisdiction. *Id.* ¶¶ 34, 36. It requires "that the defendant have certain minimum contacts with the forum State such that maintenance of the suit there does not offend 'traditional notions of fair play and substantial justice.' " *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 150 (1988) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). What constitutes sufficient minimum contacts to meet this standard in turn depends on the category of personal jurisdiction the court seeks to assert. *Russell*, 2013 IL 113909, ¶ 36. We consider first whether the circuit court had general jurisdiction over one or both of these defendants. Because it clearly did not, we then consider whether the court had specific jurisdiction over them regarding matters related to the trust.

¶ 35                              A. General Jurisdiction

¶ 36    As our supreme court recognized in *Russell*, the standard for general jurisdiction over a nonresident defendant is "very high." *Id.* The nonresident defendant's contacts with the forum state must be so "extensive and pervasive" that they "approximate physical presence." (Internal quotation marks omitted.) *Id.* This requires a showing that the defendant "carried on systemic business activity" in Illinois and did so "not casually or occasionally, but with a fair measure of permanence and continuity" (internal quotation marks omitted) (*id.*), so as "to render [the defendant] essentially at home in the forum state" (*Kowal v. Westchester Wheels, Inc.*, 2017 IL App (1st) 152293, ¶ 21). Elizabeth has made no such showing here, as to either Mr. Horneck or Geoffrey.

¶ 37    Elizabeth points out that Mr. Horneck, as trustee, retained the services of legal and accounting professionals who work and reside in Illinois and communicated with those individuals on various matters concerning the Trusts. She notes that the Trusts are both governed by Illinois law and that, for a period of time, one of the trusts owned shares in a closely held Illinois corporation and membership units in a limited liability company with offices in Illinois. Nowhere in Elizabeth's complaint or in the parties' affidavits, however, is it asserted that Mr. Horneck, a resident of Colorado, or Geoffrey, a resident of Washington, carries on the sort of permanent and continuous business activities necessary to establish Illinois as his surrogate home. Perhaps recognizing this, Elizabeth makes no mention of general jurisdiction in her reply brief.

¶ 38    We agree with the circuit court that Illinois courts lack general jurisdiction over either of these nonresident defendants.

¶ 39                              B. Specific Jurisdiction

¶ 40    We turn now to the parties' arguments regarding specific jurisdiction. Section 2-209 of the Code, the Illinois long-arm statute, enumerates 14 acts that, if engaged in by a nonresident defendant, may subject that defendant to the jurisdiction of this state's courts in causes of action "arising from the doing of any such acts." 735 ILCS 5/2-209(a)(1)-(14) (West 2018). Included in this list is "[t]he ownership of an interest in any trust administered within this State." *Id.* § 2-209(a)(13). This provision, if applicable, could be the basis for personal jurisdiction over both Mr. Horneck and Geoffrey because "[i]n a conventional trust, the trustee holds the legal title and the beneficial owner holds the equitable title." *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996); see also *Cori v. Schlafly*, 2021 IL App (5th) 200246, ¶ 24 ("Where a trust is administered in Illinois, and litigation arises with reference to that trust, an Illinois court would have specific jurisdiction over the trust and the designated trustee for purposes of that litigation.").

¶ 41    Elizabeth makes three arguments for why the principal place of administration for the Trusts is Illinois and not Colorado. She asserts that (1) the settlors designated Illinois as the principal place of administration in the trust instruments and that designation must be honored under the newly adopted Trust Code, (2) the original *situs* of the Trusts was Illinois and Mr. Horneck never did anything to formally transfer the Trusts to Colorado, and (3) Illinois is the principal place of administration under the common-law factors historically considered to make such a determination. We consider each argument in turn.

¶ 42                    1. Designation of a Principal Place of Administration
                                    in the Trust Instruments

¶ 43    Elizabeth's first argument rests on section 108(a) of the Illinois Trust Code, which, since January 1, 2020, has provided:

>    "Without precluding other means for establishing a sufficient connection with the designated jurisdiction, the terms of a trust designating the principal place of administration are valid and controlling if:
>
>>        (1) a trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction; or
>
>>        (2) all or part of the administration occurs in the designated jurisdiction." 760 ILCS 3/108(a) (West 2020).

¶ 44    Elizabeth argues that because Illinois was "designated" in section (c) of the Trusts as the principal place of administration, it remains the *situs* of the Trust because some part of the administration of the Trust still occurs in this state. Mr. Horneck has, for example, retained Illinois counsel to represent him in his fiduciary capacity as trustee, hired an Illinois accountant to advise him on tax-related matters concerning the Trusts, and permitted both of these individuals to communicate on his behalf directly with Elizabeth on trust matters.

¶ 45    We agree with Elizabeth that section 108(a) of the Trust Code allows a court to exercise personal jurisdiction based on the designation of a particular *situs* in the trust instrument. Drafters of such documents may now designate Illinois as a trust's principal place of

administration, even where there is an out-of-state trustee, so long as at least some part of the trust's administration occurs in Illinois. The legislative choice to honor such a designation serves the laudable goal of minimizing uncertainty by eliminating the need for the circuit court to apply a multifactored test to determine a trust's principal place of administration.

¶ 46     But to apply section 108 of the Trust Code there must first be a designation to honor. We reject Elizabeth's argument that paragraph (c) of the trust instruments constitutes such a designation in this case. As noted above, paragraph (c) provides:

> "*Illinois Law Governs;* Situs *and Administration of Trusts; Substitute Trustees*. The validity and effect of each trust created hereunder is governed by Illinois law. The *situs* of any trust created hereunder may, however, be transferred at any time or times to such place or places as the Trustees deem to be for the best interests of such trust."

¶ 47     Elizabeth herself acknowledges that this language does not *expressly* designate Illinois as the Trusts' place of administration. She argues that it nevertheless must be read to impliedly do so or the word "however"—meaning "in spite of" or "on the other hand"—is rendered meaningless. In Elizabeth's view, if the grantors did not designate Illinois as the *situs* of the Trusts, then "there is no location designated in the trust to be 'in spite of.' " We read this provision differently. In our view, the settlors employed the word "however" in paragraph (c) not to indicate that they were designating Illinois as the *situs* of the Trusts subject to later change, but rather to signal that the law governing interpretation of the trust instrument was being designated while the *situs*, "on the other hand," was not. As the comments to section 108 of the Uniform Trust Code—which section 108 of the Trust Code is modeled on—recognize, "[a] settlor is free to designate one jurisdiction as the principal place of administration and another to govern the meaning and effect of the trust's provisions." Unif. Trust Code § 108 Comment (2000). For this reason, the comments warn that the designation of a principal place of administration "should be distinguished from" language "designating the law to determine the meaning and effect of the trust's terms." *Id.*

¶ 48     It would be surprising indeed to find a designation of the type Elizabeth searches for here in trust instruments drafted decades ago. When divining a settlor's intent in such documents, "[t]he law which we must examine is that under which the settlor considered the trust provisions." *Ford v. Newman*, 77 Ill. 2d 335, 339 (1979); see also 35 Ill. L. and Prac. *Trusts* § 64 (2021 Update) ("the state of law when the settlor drafted the instrument is one of the circumstances a court may consider in determining the settlor's intent"). And a settlor in 1993 would have had no reason to draft a designation satisfying section 108(a) of the Trust Code, which only took effect last year, almost 30 years later.

¶ 49     Citing no authority, Elizabeth asserts that enactment of the Trust Code represented nothing more than a codification of Illinois's existing common law governing the administration of trusts. But this squarely conflicts with its characterization as "a comprehensive overhaul of Illinois trust law that largely tracks with the Uniform Trust Code." Pete Sherman, *A Trustworthy Effort*, 107 Ill. B.J. 12, 12 (2019). And the statute itself provides that "[t]he common law of trusts and principles of equity" are intended to "*supplement* th[e] [Trust] Code." (Emphasis added.) 760 ILCS 3/106 (West 2020). Elizabeth points to nothing in the preexisting common law or the Trust and Trustees Act, which preceded the Trust Code, that would have encouraged the settlors in this case to "designate" Illinois as the Trusts' principal place of administration, thereby removing it from the common law test for trust *situs* and substituting the more liberal test in section 108(a) of the Trust Code. *Wallace v. Malooly*, 4 Ill.

2d 86, 95 (1954), a case that, when pressed at oral argument, Elizabeth's counsel cited as setting out essentially the same test as section 108 of the Trust Code, stands for the more general proposition that trust beneficiaries are entitled to reasonable notice of matters affecting their ability to enforce their rights under a trust. The case has nothing to do with the designation of a trust's *situs* or principal place of administration.

¶ 50    Elizabeth has failed to make a *prima facie* showing that her parents designated Illinois as the Trusts' principal place of administration. Therefore, we reject her argument that we should find jurisdiction on the basis that some part of the administration of the trust continues to occur in Illinois.

¶ 51                          2. The Trustee's Failure to Formally Transfer
                                  the Trusts' Place of Administration

¶ 52    Elizabeth next argues that Illinois was the original *situs* of the Trusts and paragraph (c) of the trust instruments requires a finding by the trustee that it will be in the best interests of the Trusts before the *situs* may be moved. She argues that because Mr. Horneck never took any formal action to move the *situs* of the Trusts form Illinois to Colorado by, for example, registering the Trusts in Colorado, filing Colorado tax returns, or personally notifying Elizabeth that the Trusts would henceforth be administered in Colorado, this condition was not satisfied. Underlying this argument, however, is the presumption that Mr. Horneck was the individual responsible for the change in situs and that some sort of formal action on his part was required to effect such a change. We agree with defendants that this was not the case.

¶ 53    Defendants do not dispute that Illinois was the Trusts' original place of administration. But as they correctly note, the administration of a trust is generally understood to occur where the individual charged with that administration—the trustee—is located. See *Campbell v. Albers*, 313 Ill. App. 152, 160 (1942) ("[t]he location of the administration of a trust, or the *situs* of a trust, means the place of the performance of the active duties of the trustee" (internal quotation marks omitted)); see also Restatement (Third) of Trusts § 76, cmt. b(2) (2007) (noting that "the principal place of administration ordinarily will be the place where the trustee is located" (internal quotation marks omitted)). Here, Mr. Horneck was never the one to change the Trusts' place of administration. It was Corrinne who, while serving as the acting trustee, relocated from Illinois to Florida. And she set in motion a second change to the place of administration when she named Mr. Horneck, a Colorado resident, as her successor trustee. Elizabeth has not alleged that Corrinne failed to provide her with proper notice—or indeed that Elizabeth did not have actual notice—of either of these changes.

¶ 54    The language of the trust instruments also dispels the notion that any formal action was required to accomplish a transfer of the Trusts' situs. Immediately after stating that "[t]he *situs* of any trust created hereunder may *** be transferred at any time or times to such place or places as the Trustees deem to be for the best interests of such trust," paragraph (c) notes that "[i]n so doing, the Trustees may resign and appoint a substitute Trustee." That is precisely what Corrinne did when she named Mr. Horneck as her successor. Article IX, section (j), of Robert's Trust and article V, section (i), of Corrinne's Trust, titled "Powers of Continuing and Successor Trustees," further provide that "[u]pon any change in any trusteeship," a successor trustee "shall have all of the powers, authorities, rights, discretions, immunities, estates, titles, duties and obligations of the original Trustee, *without the necessity of any conveyance or the taking of any action whatsoever*." (Emphasis added.) As Mr. Horneck's counsel noted at oral

argument, the *situs* of these Trusts was not fixed by designation but rather *by operation* of the trust instruments.

¶ 55    In sum, we must reject Elizabeth's argument that a lack of formal action by either Corrinne or Mr. Horneck somehow resulted in the Trusts' principal place of administration remaining in Illinois after the relocation of the original trustee and the later appointment of an out-of-state successor trustee.

¶ 56                              3. The Common Law Factors

¶ 57    Elizabeth's final argument is that the common law factors generally considered by courts support a finding that the Trusts are administered in Illinois. Those factors are "(1) the provisions of the trust instrument, (2) the residence of the trustees, (3) the residence of the beneficiaries, (4) the location of the trust assets, and (5) the location where the business of the trust is to be conducted." *Burgauer v. Burgauer*, 2019 IL App (3d) 170545, ¶ 44. Elizabeth's assertion that the first factor weighs in her favor is based on her argument, which we have already rejected, that the trust instruments designate Illinois as the *situs* of the Trusts. Elizabeth also contends that the last two of the factors support a finding of personal jurisdiction. She notes that, at the time her causes of action arose, trust assets included shares in an Illinois corporation and membership units in a Delaware limited liability company with offices in Illinois. And she points to Mr. Horneck's retention of Mr. Saunders and Mr. Crowe, legal and accounting professionals in Illinois.

¶ 58    At best, we view the location of trust assets as a neutral factor in this case. Of the two trusts, only Richard's Trust ever held shares in the companies Elizabeth now focuses on. And while those assets were held during a period of time in which Elizabeth claims Mr. Horneck breached his fiduciary duties to her, they were also fully distributed over eight months before Elizabeth initiated this action.

¶ 59    Nor do we believe that the services rendered by Mr. Saunders and Mr. Crowe, whom it seems were hired primarily because of their history with the family and not based on their particular location, should be considered the equivalent of the trust "doing business" in Illinois. Mr. Saunders advised Mr. Horneck on legal matters relating to both the Trusts and to Corrinne's estate and communicated with Elizabeth and her counsel regarding such matters. Mr. Crowe provided some limited tax advice and prepared Illinois tax returns identifying the Trusts as nonresident trusts. The *business* of investing trust assets, monitoring those assets, making payments required by the trust instruments, and making decisions regarding when and how to fulfil the terms of those documents was accomplished by Mr. Horneck in Colorado.

¶ 60    *Capra v. Lipschultz*, 2020 IL App (1st) 192160, a recent decision of this court, does not persuade us otherwise. In *Capra*, beneficiaries of a trust sought an accounting from a nonresident trustee, and the circuit court granted the trustee's motion to dismiss the suit for a lack of personal jurisdiction. *Id.* ¶ 1. This court reversed on appeal. *Id. Capra* has little in common with this case, other than the fact that it involved a nonresident trustee.

¶ 61    As an initial matter, the plaintiff in *Capra* never relied, as Elizabeth does here, on subsection (a)(13) of the long-arm statute. The court in that case thus had no reason to consider the five factors for determining a trust's place of administration set out in *Burgauer*. The plaintiff in *Capra* relied instead on subsection (a)(14) of the statute, which provides for personal jurisdiction over a trustee who is engaged in "the exercise of powers granted under the authority of this state as a fiduciary." *Capra*, 2020 IL App (1st) 192160, ¶ 28 (citing 735

- 11 -

ILCS 5/2-209(a)(14) (West 2016)). Elizabeth makes no argument as to why subsection (a)(14) would apply here. Any such argument would not only be forfeited because she failed to make it in the circuit court but would also be without merit, since the language of the trusts are different in these two cases. In *Capra*, the trust instrument specified that, in addition to the interpretation of the trust, all " 'powers and duties of the Trustee' " were to be governed by Illinois law. *Id.* The *Capra* court found that there was personal jurisdiction under section 2-209(a)(14) because Illinois law expressly governed the trustee's "powers and duties." *Id.* In contrast, the choice-of-law designation for the Trusts in this case only provides that "the validity and effect of each trust created hereunder" is governed by Illinois law and says nothing about the powers and duties of the trustee. Even if subsection (a)(14) applied here, it would not assist Elizabeth in establishing personal jurisdiction over Geoffrey, who is not the trustee but a co-beneficiary. Elizabeth never addresses this point or even acknowledges that reversal on this basis would be, at best, a reversal in part.

¶ 62 The plaintiff in *Capra* also specifically invoked subsection (c) of the long-arm statute (*id.* ¶ 22), a catch-all provision recognizing personal jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States" (735 ILCS 5/2-209(c) (West 2002)). Our supreme court has noted that when this subsection of the statute is relied upon, the traditional two-part jurisdictional inquiry "collapses" into "the single issue of whether a defendant's Illinois contacts are sufficient to satisfy federal and Illinois due process." *Russell*, 2013 IL 113909, ¶ 30. Here, Elizabeth has not specifically invoked subsection (c) of the long-arm statute as a basis for personal jurisdiction. To the extent that, by relying on *Capra*, she intended to implicitly invoke that section, the calculus concerning defendants' contacts with Illinois is quite different in this case. These differences, tabulated by Mr. Horneck in his appellate brief, include the facts that, in *Capra*, trust assets were directed to Illinois to pay for the primary beneficiary's care and funeral expenses and the trustee regularly traveled to Illinois. *Capra*, 2020 IL App (1st) 192160, ¶¶ 10, 26-27. The *Capra* court determined that, while the defendant's actions in that case "may have been initiated in Nevada," almost all of them were nevertheless "directed to Illinois." *Id.* ¶ 26. Most notably, all three of the beneficiaries in *Capra* resided in Illinois, and the trustee regularly sent payments to them in Illinois. Here, payments were sent by Mr. Horneck in Colorado to Elizabeth and Geoffrey in Florida and Oregon, respectively. In our view, the substantially fewer contacts defendants in this case have with Illinois preclude a finding, as in *Capra*, that they were "fairly warned that [they] could be haled into Illinois courts with respect to the administration of the trust[s]." *Id.* ¶ 28.

¶ 63 The circuit court did not err in concluding that Illinois courts lack specific jurisdiction over these nonresident defendants.

¶ 64 IV. CONCLUSION

¶ 65 For the reasons stated above, we affirm the circuit court's order granting defendants' motions to dismiss for lack of personal jurisdiction.

¶ 66 Affirmed.