2026 IL App (1st) 232051
No. 1-23-2051
Opinion filed June 11, 2026

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| VIVEK GUPTA, Individually and Derivatively on Behalf of Omni Medical Student Training, L.L.C., | Appeal from the Circuit Court of Cook County. |
| Plaintiff/Appellant, | |
| v. | No. 2019 CH 06800 |
| THERESA SIAW and ARTS MEDICAL CONSULTING, L.L.C., | The Honorable James E. Hanlon, Jr. Judges, presiding. |
| Defendants | |
| (Beatrice Siaw, Kwadwo Amoateng and Margaret Siaw-Woods, Citation Respondents-Appellees). | |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion. Presiding Justice Mitchell and Justice Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1     In this appeal, plaintiff Vivek Gupta challenges the trial court's dismissal of two defendants, Beatrice Siaw and Kwadwo Amoateng, for lack of personal jurisdiction. For the following reasons, we reverse.

¶ 2                              BACKGROUND

¶ 3         The judgment creditor, plaintiff Gupta, obtained a judgment on March 11, 2021, against the judgment debtors, defendants Theresa Siaw (Theresa)[1] and Arts Consulting, L.L.C. That judgment is not the subject of this appeal. What is the subject of this appeal are Gupta's attempts to collect on that judgment. There is a difference between obtaining a judgment and collecting on one.

¶ 4         During supplementary proceedings, Gupta learned that Theresa was the beneficiary of certain trusts, including the 2015 Theresa Siaw Exempt Trust (Exempt Trust) and the 2015 Theresa Siaw Irrevocable Trust (Irrevocable Trust). Theresa and her sister Margaret Siaw-Woods (Margaret) are cotrustees of the Exempt Trust. Margaret was allowed to intervene in these proceedings as cotrustee or trustee of various trusts, including the Exempt Trust.

¶ 5         After Gupta discovered transfers from various trusts to Theresa, the judgment debtor, he tried to enjoin further transfers and freeze what moneys were still left in the United States. The trial court found that "[m]uch of the transfers discovered by Gupta landed in [Theresa's] hands in Ghana." However, some of the transferred funds were still in the United States, and Gupta sought to freeze the bank accounts of four individuals to whom Theresa had transferred funds, claiming that these transfers were fraudulent.

¶ 6         Gupta filed an emergency motion to freeze the accounts of four allegedly fraudulent transferees, whom the trial court nicknamed "the Frozen Four." The Frozen Four were Amoateng, Dunyo Awoonor, Margaret Adatsi, and Sabha Abdour. On May 25, 2023, the trial court granted Gupta a temporary order[2] freezing the four bank accounts until a hearing could

---

[1]Because other members of the Siaw family are involved, we refer to Siaw family members by their first names.
        [2]We refer to this order simply as a temporary order rather than as a temporary restraining order (TRO) because the trial court subsequently found that, "whether characterized as a TRO or a prejudgment attachment, the freeze request was unmoored from any claim under the Uniform Fraudulent Transfer Act or the third-party Citations." (Cir. Ct. Cook Co., Sept. 23, 2024).

be held. On July 14, 2023, after an evidentiary hearing was held, the trial court terminated its prior temporary order and denied Gupta's motion. The court found that Gupta did not have a likelihood of success on the merits regarding his theory that the funds represented proceeds of fraudulent transfers by Theresa, the judgment debtor. As the trial court later explained, "[t]he essence of [the July 14, 2023] decision was that none of the challenged transfers could be fraudulent transfers as to [Theresa's] creditors (Gupta included) because the funds came from a source (the Exempt Trust) that was exempt from judgement collection efforts."

¶ 7        On August 14, 2023, Gupta filed interlocutory appeal No. 1-23-1461, pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017), appealing the July 14, 2023, order, as well as a subsequent memorandum opinion entered on July 18, 2023, which provided the trial court's reasoning in more detail.

¶ 8        After the May 25, 2023, temporary order was terminated, Margaret filed a motion for wrongful attachment against Gupta and for leave to file a petition against him for the related attorney fees. On December 27, 2023, the trial court found that Gupta had wrongfully attached the accounts and granted Margaret's wrongful-attachment motion. On September 23, 2024, the trial court reviewed two fee petitions arising out of the May 25, 2023, temporary order: one from Theresa, the judgment debtor, and one from Margaret. The trial court granted Margaret's petition and denied Theresa's petition. On October 23, 2024, Gupta filed two separate interlocutory appeals. The first one, No. 1-24-2124, which was filed pursuant to Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016), appealed both the court's December 27, 2023, order finding wrongful attachment by him and the court's September 23, 2024, order, which had granted Margaret's fee petition.

¶ 9          The second interlocutory appeal filed on the same day—October 23, 2024—was filed pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017) and challenged four other orders entered by the trial court on September 23, 2024. The first order approved a settlement agreement between the Exempt Trust and third-party respondent Awoonor, regarding funds that had been previously frozen under the court's May 25, 2023, order. The court approved the settlement, finding that "[t]o hold otherwise would be to reinstate a prejudgment attachment that this Court found to be wrongfully issued in the first instance."

¶ 10          In the second of the four orders, the trial court vacated most of an order that it had entered on May 10, 2023. The order had enjoined transfers from the trusts and was entered prior to both the temporary freezing order on May 25, 2023, and the subsequent order finding the funds wrongfully frozen. In this second order, the trial court modified the May 10, 2023, order to permit the trustees to manage the trusts but left in place the prohibition against transfers to Theresa.

¶ 11          The third order concerned Margaret's motion to distribute proceeds from a condo sale pursuant to a settlement agreement among Siaw family members. The trial court granted the motion and denied Gupta's objections, noting that the settlement had no effect on Gupta's rights and "the only relevant parties" had resolved any issues among themselves. The fourth order denied Gupta's motion to reconsider the court's October 25, 2023, order permitting the Exempt Trust to pay for counsel for Theresa as cotrustee and in her individual capacity.

¶ 12          Gupta also served citations to discover assets on Theresa's sister Beatrice Siaw (Beatrice), Amoateng, and Awoonor, all of whom moved to quash them. As noted above, the latter two were part of the Frozen Four. On October 2, 2023, the trial court granted Beatrice's and Amoateng's motions to quash for lack of personal jurisdiction but denied Awoonor's

motion. Of these three individuals, only Beatrice and Amoateng are involved in this appeal. On November 1, 2023, Gupta filed interlocutory appeal No. 1-23-2051, pursuant to Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016), appealing from the October 2, 2023, order.

¶ 13    This court previously consolidated all four appeals for purposes of consideration and decision. On August 19, 2024, on the court's own motion, we found that, as all four appeals arose from the same proceeding, consolidation was appropriate because "issuing an opinion or order in one appeal before the other runs the risk of considering unnecessary issues." However, in retrospect, we may have been too hasty. Therefore, in a separate order, we have separated appeal No. 1-23-2051 from the others, because it involves two appellees who are not appellees in the other appeals and involves issues of personal jurisdiction that are not at issue in the other three appeals. For the following reasons, we reverse the trial court's dismissal for lack of personal jurisdiction.

¶ 14                                                  ANALYSIS

¶ 15                                          I. Standard of Review

¶ 16    The plaintiff bears the initial burden of establishing a *prima facie* case for jurisdiction over an out-of-state resident. *Russell v. SNFA*, 408 Ill. App. 3d 827, 830 (2011). After the plaintiff establishes a *prima facie* case, "[t]he burden then shifts to the defendant to offer uncontradicted evidence defeating jurisdiction." *Silver v. Hornbeck*, 2021 IL App (1st) 201044, ¶ 33. If the jurisdictional facts are in controversy, then the trial court must conduct a hearing to resolve the disputed facts. *Russell*, 408 Ill. App. 3d at 830-31. When a trial court decides a jurisdictional question solely on the basis of documentary evidence and without an evidentiary hearing, as it did in this case, we review the issue *de novo*. *Russell*, 408 Ill. App. 3d at 831. When exercising *de novo* review, we resolve factual conflicts in favor of the plaintiff. *Russell*,

408 Ill. App. 3d at 831; *Tri-Meats, Inc. v. NASL Corp.*, No. 99 C 3692, 2001 WL 292621, at *2 (N.D. Ill. Mar. 26, 2001) (when determining whether personal jurisdiction exists based on affidavits and documents, "[w]e must resolve factual disputes in favor of the plaintiff").

¶ 17                    II. Supplementary Proceedings and Appellate Jurisdiction

¶ 18            The issues regarding personal jurisdiction arose within the context of a supplementary proceeding. The Illinois statute authorizing supplementary proceedings provides a mechanism by which a judgment creditor, such as Gupta, may initiate a proceeding to discover the assets of a judgment debtor or a third party, for the purpose of applying those assets to satisfy a judgment that the creditor has already obtained. *Professional Neurological Services, Ltd. v. City of Chicago Comm'n on Human Relations*, 2025 IL App (1st) 231705, ¶ 11 ; 735 ILCS 5/2-1402 (West 2024) ("Citations to discover assets.").[3]

¶ 19            Section 2-1402(a) of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2024)) broadly states that a judgment creditor is "entitled to prosecute citations to discover assets for the purposes of examining the judgment debtor *or any other person*." (Emphasis added.) However, the statute's implementing rule, Illinois Supreme Court Rule 277 (eff. Oct. 1, 2021), is more narrow. The rule provides for only two categories of parties against whom a judgment creditor may bring supplementary proceedings: (1) the judgment debtor and (2) third parties whom the judgment creditor believes may have property of, or may be indebted to, the judgment debtor. Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021) (a supplementary proceeding "may be against the judgment debtor or any third party the judgment debtor believes has the property of or is indebted to the judgment debtor"); *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 92.

---

[3]Changes that took effect January 1, 2026, have no effect on appellate issues. Pub. Act 104-120, § 10 (eff. Jan. 1, 2026).

¶ 20    The proceeding is commenced "by the service of a citation on the party against whom it is brought." Ill. S. Ct. R. 277(b) (eff. Oct. 1, 2021). The citation is served and returned "in the manner provided by rule for service." Ill. S. Ct. R. 277(c)(4) (eff. Oct. 1, 2021). Amoateng was served by Gupta with a citation in New York. For Beatrice, who lives in Ghana, the trial court authorized alternative service by e-mail. In addition to proper service, a trial court must have personal jurisdiction over the person cited, as is true in any other civil proceeding. *Shipley*, 2014 IL App (4th) 130810, ¶ 91; *Capital One Bank, N.A. v. Czekala*, 379 Ill. App. 3d 737, 742 (2008). Service here is not contested.

¶ 21    Gupta alleges that we, the appellate court, have appellate jurisdiction over the trial court's order dismissing Beatrice and Amoateng, pursuant to Illinois Supreme Court Rule 304(b)(4) (eff. Mar. 8, 2016). Rule 304 permits appeals from certain final judgments that do not dispose of an entire proceeding; paragraph (a) of that rule requires a special finding by the trial court to permit the appeal, while paragraph (b) specifies six categories of judgments that do not require such a special finding. Ill. S. Ct. R. 304(a), (b) (eff. Mar. 8, 2016). One of these six categories is "[(1)] [a] final judgment or order [(2)] entered in a proceeding under section 2-1402 of the Code of Civil Procedure." Ill. S. Ct. R. 304(b)(4) (eff. Mar. 8, 2016). Paragraph (b) provides us with appellate jurisdiction, because (1) a dismissal for lack of personal jurisdiction is a final judgment (*Silver*, 2021 IL App (1st) 201044, ¶ 30) and (2) the order was entered in a citation proceeding under section 2-1402. See Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016).

¶ 22    In addition, "[t]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). Gupta filed his notice of appeal on November 1, 2021, which was exactly the

thirtieth day after the trial court's October 2, 2023, decision, thereby giving us jurisdiction to entertain his appeal of the trial court's order regarding Beatrice and Amoateng.

¶ 23                                              III. Personal Jurisdiction

¶ 24          Both Beatrice and Amoateng moved to quash the citations served on them, claiming that Illinois courts lacked personal jurisdiction over them, and the trial court agreed.

¶ 25          Section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2024)) sets out when Illinois courts will exercise personal jurisdiction over nonresident defendants, such as Beatrice and Amoateng. In the case at bar, Gupta asserts jurisdiction pursuant to subsection (c) of section 2-209, which is commonly called the " 'catchall' " provision. *Russell*, 408 Ill. App. 3d at 831. This provision permits an Illinois court to exercise jurisdiction to the fullest extent allowed by the due process clause of the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV). *Russell*, 408 Ill. App. 3d at 831; *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (the Illinois long-arm statute was amended in 1989 to add subsection (c) to be "coextensive with the due process requirements of the United States Constitution"). Thus, to determine jurisdiction in Illinois, we must turn our attention to the due process requirements set forth by the United States Supreme Court. *Kothawala v. Whole Leaf, LLC*, 2023 IL App (1st) 210972, ¶ 15 (with the catch-all provision, we "consider only federal principles").

¶ 26          The fourteenth amendment's due process clause limits the power of a state court to exercise jurisdiction over a defendant. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021). A state court cannot exercise jurisdiction over an out-of-state defendant unless that defendant has minimum contacts with the state. *Ford*, 592 U.S. at 358. This focus on minimum contacts has caused courts to recognize "two kinds of personal

jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford*, 592 U.S. at 358. Typically, a defendant is subject to general jurisdiction in her place of domicile, and jurisdiction extends to any and all claims brought against her there. *Ford*, 592 U.S. at 358-59. In the case at bar, the trial court observed that Gupta had not argued for general jurisdiction.

¶ 27    With specific jurisdiction, jurisdiction extends to a narrower class of claims than with general jurisdiction. For specific jurisdiction to exist, the plaintiff's claims must arise out of or relate to the defendant's contacts with the state. However, to serve as a basis for jurisdiction, the defendant's contacts must be the result of some purposeful act by the defendant by which she purposefully availed herself of the privilege of conducting activities in the state. In sum, the due process test for specific jurisdiction asks (1) whether there were purposeful acts by defendant by which she purposefully availed herself of the privilege of conducting business in the forum state and (2) whether plaintiff's claims arise out of or relate to those contacts. *Ford*, 592 U.S. at 359; *Kothawala*, 2023 IL App (1st) 210972, ¶¶ 22-23 (summing up the two-part test for specific jurisdiction).

¶ 28    For the second question, "a strict causal relationship between the defendant's in-state activity and the litigation" is *not* required. *Ford*, 592 U.S. at 362. The United States Supreme Court has stressed that a "causation-only approach finds no support" in its jurisprudence. *Ford*, 592 U.S. at 361 Rather, the federal court's "most common formulation of the rule" governing specific jurisdiction is that the suit must "arise out of *or relate to*" the defendant's contacts with the state. (Emphasis in original and internal quotation marks omitted.) *Ford*, 592 U.S. at 362. The first half of that rule "asks about causation," but the second half asks about "relationships *** without a causal" connection, and the two halves are separated by an

" 'or,' " indicating that either one may suffice. *Ford*, 592 U.S. at 362; *Kothawala*, 2023 IL App (1st) 210972, ¶ 25 ("Thanks to *Ford*, we now know" that "either" suffices.). For the second half of the rule, "it is enough if there is 'an affiliation between the forum and the underlying controversy,' " based on an in-state activity or occurrence involving the defendant. *Crumpton v. Haemonetics Corp.*, 595 F. Supp. 3d 687, 696 (N.D. Ill. 2022) (quoting *Ford*, 592 U.S. at 359).

¶ 29        Throughout their brief, defendants repeatedly modify the phrase "relates to" with the word "directly." Thus, they do not argue a lack of relation, as much as a lack of a "direct" relation. However, repetition does not make the law so, and their addition of the word "direct" flies in the face of United States Supreme Court jurisprudence. Recently, for example, an almost-unanimous supreme court observed:

>  "The phrase 'relating to' sweeps broadly. It means ' "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." ' [Citation.] One thing can relate to another even if the connection is 'indirect.' [Citation.] One thing can relate to another even if it was 'not specifically designed to affect' it. [Citation.] And, one thing can relate to another even without a 'strict causal relationship.' *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021); [citation]." *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. ___, ___, 146 S. Ct. 1052, 1060 (2026).

¶ 30        In the case at bar, the trial court found that Beatrice "has likely purposefully availed herself of the privilege of conducting business in Illinois by invoking the jurisdiction of an Illinois court in connection with" the trusts, and we must agree. Beatrice is the trustee of the Emmanuel Siaw Trust and the Ernestine Siaw Trust. The trial court noted that Beatrice had

taken several actions as either a beneficiary or trustee of these trusts that subjected her to jurisdiction. First, she petitioned an Illinois court to have herself appointed as replacement trustee for these trusts and remove BMO Harris as trustee. This meant that she filed paperwork with an Illinois court, seeking an Illinois court to bestow legal rights upon her. *Kaufman v. Barbiero*, 2013 IL App (1st) 132068, ¶ 57 (objecting in a forum to a trust's administration subjected a trust beneficiary to the forum's long-arm jurisdiction). As trustee, she held legal title to property belonging to Theresa. Second, Beatrice approved a series of distributions from these trusts that Gupta identified. She demanded that all the assets of one trust be distributed and petitioned the circuit court of Cook County for approval. *Kaufman*, 2013 IL App (1st) 132068, 42 (specific jurisdiction may be based on single or occasional acts). These actions are undisputed by defendants on appeal. For these reasons, we agree with the trial court's finding that Beatrice had "purposefully availed herself of the privilege of conducting business in Illinois."

¶ 31 However, the trial court found that Gupta's suit did not relate to Beatrice's contacts. The court observed that the situs of the administration of a trust is generally considered where the trustee is located, which, in this case, was Ghana, where Beatrice lives. Citing in support this court's decision in *Silver*, 2021 IL App (1st) 201044, ¶ 53, the trial court reasoned that Beatrice's actions as trustee, such as her approval of distributions, were not Illinois-based actions but Ghana-based actions. In *Silver*, we found that "the administration of a trust is generally understood to occur where the individual charged with that administration—the trustee—is located." *Silver*, 2021 IL App (1st) 201044, ¶ 53. On appeal, defendants rely on *Silver* as well.

11

¶ 32    *Silver*, however, is readily distinguishable from the case at bar. In *Silver*, the original trustee moved out of state from Illinois and then named another out-of-state resident as her successor trustee. *Silver*, 2021 IL App (1st) 201044, ¶ 53. Rejecting jurisdiction, the *Silver* court specifically noted that the defendant "was never the one to change the Trusts' place of administration." *Silver*, 2021 IL App (1st) 201044, ¶ 53. By contrast, in the case at bar, Beatrice petitioned an Illinois court to be named trustee and petitioned an Illinois court to approve distributions, thereby demonstrating both her purposeful availment of Illinois and the administration of the trust in Illinois.[4]

¶ 33    Gupta argues that the point of a citation is not only to recover assets but also to discover them, whereas the trial court denied jurisdiction, in part, because Gupta did not show that Beatrice held any funds belonging to him. The trial court stated that Gupta did not contend that Beatrice "participated in any challenged transfer." However, as the *Ford* court stressed, causation is not required. See *Ford*, 592 U.S. at 362. *Supra* ¶ 28.  In the case at bar, Beatrice approved distributions of millions of dollars, which wound up in other trusts and in Theresa's hands. It is reasonable for Gupta, as judgment creditor, to try to trace where the funds came from and went to. We cannot find on this record that Beatrice could possibly have been surprised to be hailed into an Illinois court, upon which she herself had made demands, in order to answer questions about these trusts. The trial court acknowledged that Beatrice was "a potential witness"—in other words that it would be reasonable to call her into an Illinois court

---

[4]Further, *Silver* had no need to discuss *Ford*. Although *Ford* was decided more than six months earlier, *Silver* did not cite it once—presumably because, as the *Silver* court pointed out, the plaintiff had not "specifically invoked" the catch-all provision of the long-arm statute (*Silver*, 2021 IL App (1st) 201044, ¶ 62), and thus, *Ford*'s distinction between cause and "relate[d] to" was not significant as it is in the case at bar. (Emphasis and internal quotation marks omitted.) See *Ford*, 592 U.S. at 362. Also, *Silver* was decided before the United States Supreme Court's recent decision defining " 'relating to.' " *Chevron*, 608 U.S. at ___,146 S. Ct. at 1060.

to testify about her knowledge of these various trusts, for which she is both a trustee and beneficiary. Exercising *de novo* review and resolving any conflicts in favor of plaintiff, we find that Gupta has definitely established a case for jurisdiction over Beatrice. We note that both Beatrice and Amoateng do not argue in the alternative for a remand for either discovery or a hearing; thus, that issue is waived.

¶ 34     As for Amoateng, Gupta maintains that the court has specific jurisdiction where Amoateng allegedly worked with Theresa to have thousands of dollars transferred to him from the Exempt Trust through an Illinois brokerage account and where he then made payments on Theresa's behalf into Illinois to Illinois payees, such as for her Illinois property taxes and for her Illinois attorneys in the Illinois supplementary proceeding. Amoateng concedes that thousands of dollars were paid to Illinois recipients. *Tankersley v. Albright*, 374 F. Supp. 530, 534 (N.D. Ill. 1973) (we consider "the broader activities of the defendants concerning the trust" to determine personal jurisdiction, focusing on substance rather than quantity).

¶ 35     Gupta argues that Amoateng's acts were not random, fortuitous, or attenuated (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (the purposeful availment requirement means that a defendant cannot be haled into a forum if the contacts were " 'random,' 'fortuitous,' or 'attenuated' " (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984))) and that Amoateng knew that the effects of his actions would be felt in Illinois (see *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010) (jurisdiction is appropriate where the defendant knew the effects of his intentional conduct "would be felt" in the forum state)). Jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State." (Emphasis in original.) *Burger King*, 471 U.S. at 476. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail

and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. So long as a defendant's efforts were purposefully directed toward another state through mail or wire, courts have consistently rejected the notion that his lack of physical presence defeats personal jurisdiction. *Burger King*, 471 U.S. at 476.

¶ 36    The trial court rejected this argument, asserting: "Sending wires to Illinois recipients and receiving wires from Illinois accounts do not create a connection to Illinois sufficient to establish personal jurisdiction in Illinois, even where the claim arises from those very wire transfers." In support of this statement, the trial court cited two cases, and defendants also argue them on appeal: *PNC Bank, National Ass'n v. Rising Sun Holdings, Inc.*, No. 17-cv-2245, 2019 WL 10372778 (N.D. Ill. Mar. 29, 2019), and *United Financial Mortgage Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884 (N.D. Ill. 2002). However, these cases are inapposite. In *PNC*, the court found that a wire transfer by the judgment debtor to a foreign corporation, by itself, was insufficient to establish jurisdiction. *PNC*, 2019 WL 10372778, at *1. However, the court noted that the defendant corporation had taken no action in the forum state on behalf of the party. *PNC*, 2019 WL 10372778, at *2. By contrast, in the case at bar, Amoateng was admittedly making payments on Theresa's behalf in Illinois to Illinois payees. In *United Financial*, 245 F. Supp. 2d at 894, the court held that plaintiff's own wire transfers from plaintiff's own office in Illinois were not enough to create jurisdiction over a California defendant in their contract dispute. By contrast, jurisdiction is not sought here over a defendant through the plaintiff's own actions. In the case at bar, it was clearly Amoateng, not Gupta, who was making payments on Theresa's behalf in Illinois. Thus, the cases cited by the trial court do not allay a finding of jurisdiction here.

¶ 37    The trial court acknowledged that Amoateng's receipt, and then transfer back, of funds "may be some evidence relevant to the fraudulent transfer scheme Gupta may bring." The trial court noted that "Amoateng argue[d] that because the Court denied Gupta's request for injunctive relief on the fraudulent conveyance claim, Gupta cannot argue that the wire transfer involved funds that may belong to Theresa." However, the trial court rejected that argument, finding: "That determination was not a final decision on the merits. *** Gupta is not precluded from maintaining his argument that the transferred funds may be [the] property of Theresa." Although acknowledging this evidence of Amoateng's participation in the alleged fraud scheme, the trial court found that Gupta's claims were not related to Amoateng's contacts, citing in support *Tri-Meats*, 2001 WL 292621. Defendants also argue this case on appeal. However, in *Tri-Meats*, the court found that the fact that an Illinois plaintiff sent bills from, and received payment in, Illinois was not enough to extend jurisdiction over an out-of-state defendant in a contract dispute, where receipt of the goods was at the defendant's facility in Florida. *Tri-Meats*, 2001 WL 292621, at *1, *7. As we noted with respect to *United Financial*, there is no attempt in the instant case to impute the plaintiff's, *i.e.* Gupta's, acts to Amoateng.

¶ 38    We have no doubt that, if Amoateng had flown to Illinois, withdrawn funds from an Illinois bank account, and started making payments in person here to Illinois payees on Theresa's behalf, the trial court would have found jurisdiction. We can see no different outcome here because he took advantage of the various modern conveniences at his disposal instead. The test of whether business was conducted in a state must be applied in the context " 'not of communication and transportation criteria of yesteryears, but of modern day commercial and personal accelerated relationships.' " *Tankersley*, 374 F. Supp. at 535 (quoting *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971)). This statement

15

is more true now in the age of remote video proceedings than it was 50 years ago when first made. *Tankersley*, 374 F. Supp. at 535 (" 'The long arm statutes are comrades of the computer.' " (quoting *O'Hare*, 437 F.2d at 1177)). For all the foregoing reasons, we find that the court also had personal jurisdiction over Amoateng.

¶ 39                                                                  CONCLUSION

¶ 40        As explained above, we find that Beatrice and Amoateng purposefully directed conduct to our state and that Gupta's claims relate to their acts. Neither Beatrice nor Amoateng sought, in the alternative, for further discovery or hearing, and in fact, they argued that none was necessary. Thus, we find personal jurisdiction established, and we reverse and remand for further proceedings consistent with this opinion.

¶ 41        Reversed and remanded.

*Gupta v. Siaw*, **2026 IL App (1st) 232051**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-CH-06800; the Hon. James E. Hanlon Jr., Judge, presiding. |
| **Attorneys for Appellant:** | William J. Quinlan, Lisa H. Quinlan, and Eric Schmitt, of The Quinlan Law Firm, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | John H. Ray III, of Ray & Counsel, P.C., of Chicago, for appellees Beatrice Siaw and Kwadwo Amoateng.<br><br>Elise H. Yu, of ArentFox Schiff LLP, of Chicago, for appellee Dunyo Awoonor. |